Harvey C. Williams, Percy L. Williams and Samuel Marshall Williams, Walter R. Williams, Geo. A. Williams, Martha J. Williams, Katharine M. Williams, by their Guardian James S. Williams, *v.* Edward R. Ladew and Joseph Ladew, Trading as Fayerweather & Ladew, Appellants.

171　369
28 SC 236
171　369
30 SC 181
171　369
36 SC 285

*Landlord and tenant—Lease—Holding over—Tenant at sufferance.*

Where a lease expires at a fixed date the tenant holding over is strictly a tenant at sufferance, though the lessor has the option to treat him either as a trespasser or as a tenant from year to year.

*Landlord and tenant—Tenant at sufferance—Rent—Use and occupation.*

A tenant at sufferance is liable in assumpsit for use and occupation for the interval between the termination of the lease and the election of the lessor to treat him as a trespasser.

In ascertaining the amount due in an action to recover rent for water against a tenant at sufferance, the question is what could plaintiffs reasonably and probably have got for the use of the water from other parties had the defendants given up possession at the end of their lease; not what it would cost defendants to get a supply elsewhere, or what loss they would suffer if they failed to get a supply.

In such a case it is competent for plaintiff to show that the sum named for the lease was not the entire consideration, but it is error to submit to the jury testimony which at the utmost established merely an incidental advantage to the landlord from having an active tannery in operation near his store, and the direction of custom by the lessees to his store.

Argued May 14, 1895.　Appeal, No. 162, Jan. T., 1895, by defendants, from judgment of C. P. Bedford Co., September Term, 1893, No. 360, on verdict for plaintiffs.　Before Sterrett, C. J., Green, McCollum, Mitchell and Dean, JJ. Reversed.

Assumpsit for use and occupation of water.　Before Longenecker, P. J.

At the trial it appeared that on April 16, 1877, J. B. Williams leased to J. B. Hoyt & Co., for a term of fifteen years, for the consideration of one dollar " the full exclusive right and. 'control 'of' the' waters on a certain lot or piece of ground. . . . With the privilege of piping, conveying or using the said waters in any way they may choose for the use and benefit of their Tannery." This water came from and through an abandoned ore tunnel and, under the terms of the lease, the lessee conducted the water by pipes to their tannery and used it in their tannery business.

J. B. Hoyt & Co., on December 27, 1883, sold their tannery property with all rights under this lease to Fayerweather & Ladew, who continued to operate the same, using the water under the said lease, until the 18th day of April, 1892, when the defendants in this case, continuing the name of Fayerweather & Ladew, became the owners of the said tannery and the unexpired term of the said lease. They operated the tannery, using the water in their business, as their predecessors had done, until May 1, 1893, when they sold it to the Elk Tannery Company.

Plaintiffs proved by G. W. Cunard under objection and exception work done by defendants in opening a new tunnel on the southern portion of the line of defendants' land to obtain a new water supply for their tanneries; this evidence for the purpose of establishing the value of the water which they were receiving from plaintiffs. [1]

They proved by John Sprague under objection and exception the cost of driving such a tunnel per cubic yard. [2]

They proved by Carl Gage under objection and exception that defendants requested him to join them in running this new tunnel at a cost of $1,500; this evidence for the purpose of showing the estimate which defendants put upon the value of the water received from plaintiffs. [3]

They proved by Samuel J. Robb under objection and exception an estimate of the costs of a plant for pumping water for the use of the tannery from the Juniata river; also an estimate of the cost of pumping water from the springs of the Everett Water Company and the Bloody Run Spring for the purpose of showing what the water received from the plaintiffs was worth. [4]

They proved by S. D. Williams under objection and exception that the amount of business coming to the store of J. B. Williams & Co. from the tannery for the years 1876 and 1877 would sum up to the amount of $15,000 or $20,000, and the amount of business coming indirectly through the tannery for these years, would amount to from $50,000 to $70,000. [8]

The testimony of J. J. Hetzel called by plaintiffs was as follows:

Q. What do you know about the making of the lease for this water, on the 16th of April, 1877, for a period of fifteen years? State how the arrangement was made, by whom it was made, who drew the lease, and what conversation you had with Mr. Williams in regard to the making of the lease?

A. As I stated earlier in my testimony I went to Tecumseh first, with a view to straightening out their business. During one of the visits of Mr. Ladew, one of the firm of J. B. Hoyt & Co., he asked me whether or not there could be a lease procured for this water from the tunnel, and I said I thought there could be. He asked me whether I would see Mr. Williams, and I said I would. I saw Mr. Williams and asked him whether he would give the firm a lease of the water coming from the tunnel for the tannery and he said he would—and asked what length of time it was wanted, and I told him that Mr. Ladew thought that about fifteen years would be the life of the tannery, and he said he would give it; I think he said, I will cheerfully give you a lease, and asked that it be prepared. I wrote the lease myself that is in evidence here and during one of my visits to Everett, because I was then living at Paw Paw, W. Va., this lease was delivered to Mr. Williams and by him signed, and then forwarded to New York for the signatures of the other parties. So far as consideration is concerned, the only consideration named was the nominal consideration of one dollar. There was no other consideration to my knowledge on the part of Mr. Williams.

Q. Was anything said to you by Mr. Williams then or before at the time you were arranging this lease, in regard to the voucher business or the tannery trade?

Mr. Kerr: We object to that. This witness is their witness and he is as near a party to the contract as he can be, and our party is not here, but is dead.

The Court: He has said there was only one dollar consideration. The proof that Mr. Williams never spoke to the witness about it on any other occasion is immaterial and is therefore excluded, and an exception noted to the defendants. [9]

Plaintiffs' points were among others as follows:

3. When the defendants held over after the termination of the lease without a new lease, and without action of the plaintiffs to dispossess them, they became tenants at sufferance or at will. *Answer:* That point is affirmed. [12] . . . .

7. Under all the evidence in the case the verdict should be for the plaintiffs for such sum as would be a reasonable compensation for the use and occupation of the plaintiffs' property. *Answer:* That point is affirmed, calling your attention to the instructions we have already given you, and affirming the point subject to those instructions. [13]

8. In determining what would be a proper compensation for the use and occupation of the plaintiffs' property, the jury should take into consideration the volume of business done at the defendants' tannery during the period in suit, the quality and quantity of the water taken from plaintiffs' land, its utility for the purposes for which defendants used it, and the difficulty and expense of getting another suitable supply at the time sued for. *Answer:* We affirm that point. [14]

9. The plaintiffs having given notice to the defendants of their intention to demand a reasonable compensation for the continued use of their land and the water thereon, and of their intention and opportunity to put this property to other profitable uses, the jury should take this into consideration in fixing the amount of compensation from defendants to the plaintiffs. *Answer:* This is affirmed as applying to any period subsequent to such notice, if you find notice to have been given as stated in the point. [15]

10. In determining the compensation due the plaintiff the jury may take into consideration the acts of the defendants in the premises, including their efforts to retain possession of this water supply, and their allegations made in their equity suit that the water was indispensable to the operation of their tannery, and that irreparable injury would ensue if they were deprived of the use of it. *Answer:* The acts and declarations referred to, as far as they appear in evidence in this case, may

be considered in arriving at a fair and proper rental or compensation for the period covered by the claim of plaintiffs in this action, in so far as those acts and declarations threw light upon that subject. [16]

11. If the jury believe from all the evidence in the case that the real consideration for the lease given by J. B. Williams to the defendants' predecessors was the prior business arrangement or agreement at the time existing between him and them, they may also take this into consideration in fixing the compensation due from the defendants to the plaintiffs. *Answer:* We will answer this point in connection with the next.

12. If the jury believe from all the evidence in this case that the prior business arrangements or agreements between J. B. Williams and J. B. Hoyt & Co., by which Mr. Williams' store obtained a considerable trade from Tecumseh tannery, was the inducing cause that led J. B. Williams in 1877 to give J. B. Hoyt & Co. the lease at a nominal consideration of one dollar, they may take this into consideration in fixing the compensation due the plaintiffs from the defendants. *Answer:* We affirm these points. They cover substantially the same proposition of law. The facts therein referred to, if found as stated, may be taken into consideration and open the way for the allowance of a fair and reasonable compensation for the water beyond the nominal sum of one dollar for fifteen years mentioned in the written lease. [17]

Defendants' points were as follows:

1. The tenancy was created by a written lease on the 16th day of April, 1877, which expired on the 16th day of April, 1892. That there is no evidence of any notice having been given to the defendants by the Williams heirs, to quit or of a desire to change the lease prior to April 16, 1892, the date of its expiration. Therefore when the Ladews held over after the expiration of the lease, they became tenants for another year, and had the right to the use and enjoyment of plaintiffs' property embraced in the original lease, on the same terms as they held it before. *Answer:* We refuse to so instruct you. [18] . . . .

3. That there is no sufficient evidence in this case to show any other consideration for the lease than that named in the written instrument, and the jury are therefore limited in their findings to a sum not exceeding one dollar per year. *Answer:*

We refuse this instruction and leave it to you to say upon all the evidence on the subject whether no sufficient evidence of any other consideration than that named in the written lease was shown, or whether the lease of April 16, 1877, was made in contemplation of patronage through the store as the real inducement or consideration for the making of the lease. [19]

4. If the court declines to charge the jury as requested in the third point of defendants, then the court is requested to charge, (*a*) that if the jury believe the only consideration for the use of the water demanded by J. B. Williams was that expressed in the written lease, then they cannot find for the plaintiffs a greater sum than one dollar per year; (*b*) the burden of proof is on the plaintiffs to show a different consideration than that named in the written lease, and before the jury can find that there was any other consideration for the use of the water than that set out in the written lease, the plaintiffs must satisfy the jury by clear and satisfactory evidence that there was a different consideration and what it was. *Answer:* The proposition contained in the first clause or subdivision " *a* " is refused; that contained in the second clause or subdivision " *b* " is affirmed. [20] . . . .

7. In no event can the jury find a verdict for the use of this water beyond a fair market value for this water for the purpose for which it is used, and in coming to a conclusion they are not at liberty to take into consideration any supposed or speculative income that might be derived from the use of the water for a town supply. *Answer:* As we stated before, you will have to consider both the use made of the water and also the use to which it might reasonably be applied. [21]

6. That if the larger portion of the water which came from the tunnel after 1878, when it was extended, arose on the lands of defendants and M. D. Barndollar above the plaintiffs' land, and flowed through this tunnel across plaintiffs' land to defendants' land below, the plaintiffs have no more right to this water than they would have if it flowed on the surface, and are not entitled to recover from defendants for the use of the increased flow which came from the extension of the tunnel. *Answer:* That point, in the form in which it is written, is refused. [22]

Verdict and judgment for plaintiffs for $1,018. Defendants appealed.

*Errors assigned* among others were (1-4, 8, 9) rulings on evidence, quoting the bill of exceptions; (12-22) above instructions, quoting them.

*Alexander King* and *John H. Jordan,* for appellants.—Where a tenant for a term holds over, the landlord may elect to treat him as a trespasser or as a tenant from year to year : Hemphill v. Flynn, 2 Pa. 144; Hollis v. Burns, 100 Pa. 206.

When a tenant holds over after the first year the law implies an agreement by him to pay the same rent and at the same time which he agreed to the first year: Diller v. Roberts, 13 S. & R. 59; Bedford v. McElherron, 2 S. & R. 49; Phillips v. Monges, 4 Whart. 226.

The defendants, if liable for the use and occupation, would only be so under the terms of the expired lease, so far as they are applicable. If there were no new lease, the consideration mentioned in the old lease, if it was the real and actual consideration for the use of this property, would control and govern under the tenancy created by the holding over: Logan v. Herron, 8 S. & R. 458; Laguerenne v. Dougherty, 35 Pa. 45.

*Edward F. Kerr,* of *Kerr & McNamara,* and *Harvey C. Williams, Frank Fletcher* and *George F. Sill* with them, for appellees.—The lease created an estate for years which terminated on April 16, 1892, notice to quit not being required ; and thereafter the defendants were tenants by sufferance or at will of the plaintiffs, and under the laws of Pennsylvania are liable in such a sum as would be a reasonable compensation for their use of the plaintiffs' property : Anderson's Law Dict. 140 ; Bedford v. McElherron, 2 S. & R. 49 ; Evans v. Hastings, 9 Pa. 273; McCanna v. Johnston, 19 Pa. 434; Rich v. Keyser, 54 Pa. 86 ; McGregor v. Rawle, 57 Pa. 184 ; Lesley v. Randolph, 4 Rawle, 126 ; Dumn v. Rothermel, 112 Pa. 272 ; Phillips v. Monges, 4 Wharton, 226 ; Laguerenne v. Dougherty, 35 Pa. 45 ; 2 Blackst. Com. 41 ; Overdee v. Lewis, 1 W. & S. 90 ; Bush v. Nat. Oil Ref., 5 W. N. C. 143 ; Mozart Bldg. Ass. v. Frisdjen, 5 W. N. C. 318; Farmers' L. &. T. Co. v. St. Joseph R. R. Co., 2 Fed. Rep. 117.

In ascertaining what would be a reasonable compensation for the use and occupation of plaintiffs' property, the jury could

not be limited to its value for the particular use which defendants made of it. The recovery was to be determined with reference to the value of the property for any use to which it might reasonably be put: Horton v. Cooley, 135 Mass. 589; Sedgwick on Damages, 252; Farrel v. Colwell, 30 N. J. L. 123; R. R. Co. v. Nichols, 24 Kans. 242; Collard v. R. R., 7 H. & N. 79; Shenango etc. R. R. v. Braham, 79 Pa. 447; Cummings v. Williamsport, 84 Pa. 472; Allegheny v. Black, 99 Pa. 152; Bradley v. Vernon, 166 Pa. 603; Brooks v. Presbyterian Church, 135 Pa. 137; Melvin v. Melvin, 130 Pa. 6; Feagley v. Norbeck, 127 Pa. 238.

There was no error in the charge of the court, or in the admission of evidence, which permitted the jury to determine what was the actual consideration or moving cause that induced Jacob B. Williams, in 1877, to give J. B. Hoyt & Company a lease of the Tecumseh water right for fifteen years at the nominal consideration of one dollar: Jack v. Dougherty, 3 Watts. 157; Steamboat Co. v. Brown, 54 Pa. 77; Strawbridge v. Cartledge, 7 W. & S. 399; Watterson v. Allegheny Valley R. R., 74 Pa. 208; West Chester & Phila. R. R. v. Bromall, 18 W. N. C. 44.

OPINION BY Mr. JUSTICE MITCHELL, October 7, 1895:

The main contention of the appellants that during the time of occupation sued for they were tenants from year to year, cannot be sustained. The lease was for a definite term of fifteen years, at a gross rental for the entire term. Although the amount, one dollar, appears to be merely nominal, yet it is for the whole term, and not for any particular year or years. But even if it were an annual rent it would not help appellants' case, for the lease expired at a fixed date and no notice was necessary to terminate the tenant's rights under it. When they held over after its expiration they were strictly tenants at sufferance, though the lessors had the option to treat them either as trespassers, or tenants from year to year, Hemphill v. Flynn, 2 Pa. 144, or by permitting the holding over to run on for a sufficient length of time, might turn the tenancy into one at will which would require notice to terminate: Bedford v. McElherron, 2 S. & R. 49. But nothing of this kind took place between these parties. There were dickerings for a renewal of

the lease, and offers on the one side and the other but nothing which could be considered as an agreement for a new lease, or a waiver of the lessor's rights on the expiration of the old one. Failing to reach an agreement the appellants remained as tenants at sufferance.

At common law tenants at sufferance appear not to have been liable for rent, and some expressions to that effect are to be found in our own earlier cases, but in Bush v. Nat. Oil Refining Co., 5 W. N. C. 143, it was expressly held that such tenant is liable in assumpsit for use and occupation for the interval between the termination of the lease and the election of the lessor to treat him as a trespasser.

The plaintiffs therefore made out a sufficient cause of action, but there were unfortunately such serious errors in the way it was submitted to the jury that we are obliged to send it back for another trial.

A very large part of the evidence admitted was wholly irrelevant. The jury seem to have been allowed to consider what the water was worth to the defendants, and the bulk of the evidence in the case, covered by the first four assignments of error, was directed to this view. The same idea was conveyed in the plaintiffs' eighth and tenth points which were affirmed. This was wholly erroneous. What the water was worth to the defendants, what it would cost them to get a supply elsewhere, or what loss they would suffer if they failed to get a supply, were matters with which neither the plaintiffs nor the jury had anything to do. What the plaintiffs are entitled to recover is compensation to them for the use of their property, and whether such use was profitable or otherwise to the defendants is entirely immaterial. The question is what could plaintiffs reasonably and probably have got for the use of their water from other parties had the defendants given up possession at the end of their lease. All the assignments of error based on this branch of the case must be sustained.

It was also error to submit to the jury the testimony in regard to the consideration in the way of business to the original lessor, J. B. Williams, for the lease. While it was competent for plaintiffs to show that the money named in the lease was not the whole consideration yet they were bound to prove it by clear and convincing evidence. They entirely failed to do so.

The testimony at the utmost establishes nothing more than an incidental advantage to Williams from having an active tannery in operation at that place, and the direction of custom by the owners to his store. This no doubt was as the witnesses say, a part of the inducement moving Williams to give the lease of the water at a nominal rent, but there is nothing in the testimony to justify the inference that it was any part of the consideration agreed between the parties, or that even Williams, much less Hoyt & Co., so regarded it. The offer as well as the testimony fell far short of the requirements and should have been excluded.

Judgment reversed and venire de novo awarded.