## LAWER v. MITTS*
(No. 1146; July 28, 1925; 238 Pac. 654)

JUDGMENT—RES JUDICATA—LANDLORD AND TENANT—TENANT BY SUF-
FERANCE—TENANT'S LIABILITY FOR MAINTAINING A NUISANCE—
PLEADINGS—TENANT'S LIABILITY FOR RENT OF PREMISES CLOSED BY
ABATEMENT ORDER—PROCEEDINGS FOR ABATEMENT.

1. Judgment concludes only adversary parties.

2. In action by landlord against tenant for damages because of the closing of rented premises by court order in proceeding abating premises as a liquor nuisance, judgment in such proceeding based on either Laws 1921, c. 87, or chapter 117, against the landlord and tenant *held* not res judicata as to the landlord's knowledge of, or participation in, unlawful use of premises.

3. Under Comp. St. 1920, §§ 4621, 4622, tenant's occupancy of premises after expiration of lease, without any new understanding, constituted him "tenant by sufferance."

4. Landlord *held* entitled to recover from tenant, as for tort, damages for closing of premises, and loss of rental value through maintenance of public liquor nuisance thereon, within Laws 1921, cc. 87, 117, in view of tenant's duty not to occupy the property so as to bring injury to landlord.

5. Tenancy at sufferance within Comp. St. 1920, §§ 4621, 4622, is one created by the wrongful holding over and remaining in possession of a tenant whose original entrance upon the premises was lawful, and is a relation implied from the facts.

6. Tenant holding over after expiration of term is liable for reasonable value of use and occupation thereafter.

7. Petition *held* sufficient to warrant recovery by landlord as for reasonable value of use and occupation of tenant holding over after expiration of lease within Comp. St. 1920, §§ 4621, 4622, for period during which premises were closed by an abatement order.

8. Landlord was under no obligation to a tenant to furnish a bond to reopen premises abated either under Laws 1921, c. 87, or under chapter 117, by reason of tenant's possession and sale of intoxicating liquors, and his failure to so did not prevent recovery of rental value from tenant.

9. Fact that landlord, who was made defendant in proceeding against tenant to abate premises either under Laws 1921,

c. 87, or under chapter 117, because of unlawful possession and sale of intoxicating liquors thereon, was without knowledge of the nuisance and without fault, *held*, not to place on him duty to contest right of state to abate the premises.

*See Headnotes (1) 34 C. J. p. 1040; (2) 34 C. J. p. 1040; (3) 35 C. J. p. 1135; (4) 36 C. J. p. 97; (5) 35 C. J. p. 1135; (6) 36 C. J. pp. 293, 294 (7) 39 Cyc. pp. 666 (Anno), 865, 866; (8) 36 C. J. p. 70 (Anno) (9) 36 C. J. p. 70 (Anno).

APPEAL from District Court, Fremont County; CYRUS O. BROWN, Judge.

Action by H. C. Lawer against W. M. Mitts to recover damages for the closing of plaintiff's premises under an abatement against defendant for maintaining a nuisance while occupying the premises as a tenant.

*M. C. Burk* for appellant.

Plaintiff and defendant were jointly adjudged guilty of maintaining a nuisance and that judgment is res adjudicata; Holmes v. U. S., 12 A. L. R. 427; Martin v. Blattner, 25 N. W. 131; knowledge of the owner is presumed; People v. Barbiere, 166 Pac. 812; People v. Cassa Co., 169 Pac. 454; Ten. House Dept. v. McDevitt, 109 N. E. 88; where the only purpose of the action is to abate the nuisance, knowledge of the owner is immaterial; Gregg v. People, 176 Pac. 483; defendant was a tenant by sufferance; 4621-4622 C. S.; the abatement statute is void; McLeran v. Benton, 14 Pac. 879; plaintiff was equally responsible for the nuisance and has no standing as against defendant.

*Bryant S. Cromer* for respondent.

The judgment is not conclusive except as to matters litigated; 15 R. C. L. 977; Smith v. Brunswick, 80 Me. 109; the abatement order was rendered in a proceeding brought under Chap. 87, Laws of 1921. There can be no intent without knowledge. The statute is directed at the nuisance and those actually maintaining it, whether owners or tenants. The judgment against the owner is in rem and not in per-

sonam; a tenant by sufferance is liable the same as a tenant under a term; the owner was without knowledge of the tenant's unlawful acts. The constitutionality of the Act cannot be raised for the first time on appeal; 8 Cyc. 800; 3 C. J. 711.

*M. C. Burk* in reply.

Plaintiff was jointly liable and cannot maintain this action; 26 R. C. L. 757; Wabash Co. v. Locke, 14 N. E. 391; 15 R. C. L. 976; Holmes v. U. S., 12 A. L. R. 427; intent may be inferred from circumstances; 7 Ency. of Ev. 605; the constitutional question was sufficiently raised in the trial court by defendant's demurrer to the petition; 6 R. C. L. 96; and it may be raised the first time on appeal; 3 C. J. 710; Adkins v. Richmond, 81 Am. St. Rep. 705; 47 L. R. A. 583; Primeau v. Grandfeldt, 193 Fed. 911; Mass. Bank v. Shinn; 57 N. E. 611.

Potter, Chief Justice.

This case is here on direct appeal from the district court sitting in and for Fremont County, to review a judgment rendered upon a trial without a jury, in an action brought by the owner of a building in the town of Riverton in said county to recover from the defendant an amount claimed as damages because of the closing of a basement room in said building which had been rented by plaintiff to defendant, under a court order for the abatement of a nuisance declared in consequence of the possession and sale of intoxicating liquor by the defendant in said room.

The petition alleges in substance that the plaintiff was the owner of said building and entitled at all times mentioned therein to its possession and rental. That defendant was, on June 1, 1921, and "for some months prior thereto," the plaintiff's tenant, renting the east basement room, and conducting therein a pool hall, bowling alley and soft drink parlor, and was paying the plaintiff as rent the sum of $65 per month. That the said rented premises was of the reasonable rental value of said $65 per month, and had been

rented to defendant for the purpose of conducting a lawful business therein. That on May 11, 1921, and for several months prior and subsequent thereto, while defendant was such tenant, notably on May 16, 22 and 25, without the knowledge or consent of plaintiff, he "used, occupied, managed, controlled and maintained" said premises for the purpose of keeping and storing therein intoxicating liquor in violation of law, and for the purpose of selling, exchanging, bartering, exposing and keeping for sale therein intoxicating liquor in violation of the laws of the state. That in consequence thereof, an action was brought by the county attorney against defendant and plaintiff in said district court, alleging that defendant's business constituted a nuisance under the law and praying that the premises be closed and that the defendant Mitts (the defendant here) be enjoined from moving therefrom the personal property used in his said business during the pendency of the action, and that on the final hearing the injunction be made permanent and the nuisance abated. That upon a preliminary hearing, an order was duly made and entered by the court on June 3, 1921 "that said premises be closed and locked and that the sheriff take possession thereof until the final determination of the action; and that pursuant thereto the sheriff did take possession of and properly locked the premises." That the final hearing was had on July 27, 1921, at which time the court, by an order duly made and entered, made said temporary injunction permanent and adjudged the business of the defendant Mitts a nuisance and ordered the same abated. That pursuant thereto the sheriff retained possession of said rented premises and property and kept the same locked and closed until December 3, 1921, at which time, upon the application of plaintiff, the said district court entered an order permitting the plaintiff to open up the premises and use the same, thereby restoring him to the use thereof and income therefrom. That by reason of said unlawful and wrongful acts of defendant, plaintiff was deprived of the use, occupancy and revenue of said premises from June 3,

1921 to December 3, 1921, and defendant has refused and still refuses to pay the rental value thereof, thereby damaging the plaintiff in the sum of $404.30, including interest at the legal rate from December 1, 1921. That by reason also of said unlawful acts of defendant, the county, through its proper officers, has assessed against said property a fine of $300, which plaintiff has been compelled to pay, and that thereby he has been damaged in that additional amount, and also in a further additional sum of $250, the expense of employing counsel in the same abatement action. Judgment was demanded in the sum of $954.30, together with interest.

A demurrer to the petition having been overruled, an answer was filed alleging some new matters later to be referred to, also a reply denying such new matter, and the cause went to trial, resulting in a judgment in favor of the plaintiff in the sum of $410.37, allowed as the reasonable rental value of the premises during the period that the premises were closed, at the rate of $65 per month. The evidence did not show plaintiff's payment of the alleged fine or penalty, but, on the contrary, showed that it had not been paid.

The record shows that upon the trial all the files in the abatement suit were identified by the clerk of the court called as a witness for that purpose on behalf of the plaintiff, and offered and received in evidence, and at that point in the transcript of the testimony reference is made to plaintiff's "Exhibit AA," as seemingly intended to refer to said files, but the same are not attached to said transcript, nor is any such exhibit in the record here. Therefore all we may know about the facts of that proceeding is what is to be found in the pleadings. We have stated the averments of the petition concerning that proceeding. The answer avers that in said proceeding plaintiff and defendant were sued jointly, that it was found therein that a nuisance was being maintained on the premises occupied by the defendant, and that by reason thereof said premises were ordered closed. By said answer also the defendant admits expressly

that the sheriff took possession of said premises and locked the same and kept the same in his possession from on or about June 3, 1921 until on or about December 3, 1921, and that during said time the defendant did not pay any rentals on said property to plaintiff; but he denies that a fine or assessment of $300 or any other sum was levied upon or against the property of plaintiff, and denies that plaintiff had to pay that or any other sum to procure the premises released, and denies that plaintiff was compelled to employ counsel and to pay therefor the alleged sum of $200 or any other sum "on account of any act or thing done by this defendant." Thus the fact of the abatement proceeding and the closing of the premises under an order entered therein and the cause or reason for said proceeding and closing order, and the act of the sheriff thereunder sufficiently appear from the pleadings.

But it does not directly appear whether the proceeding was brought and determined under the provision of Chapter 87, Laws of 1921, which declares to be a nuisance any building or place used for the purpose of lewdness, prostitution or gambling, or for keeping, maintaining, manufacturing, selling, or exchanging, etc., any intoxicating liquor with intent to violate any law of the State, as well as the furniture, fixtures, and devices therein; and that whoever shall erect, establish, maintain, use, own or lease any such building or place is guilty of a nuisance; and provides for the abatement thereof in the name of the state; or whether it was brought under somewhat similar provisions in Chapter 117 of the laws of the same year—the liquor prohibition law— which is a substantial copy of the provisions of the so-called National Volstead Act, U. S. Comp. St. Am. Supp. 1923; Sec. 10138¼ et seq. Counsel for plaintiff refers indirectly to the proceedings as having been brought under Chapter 87, by quoting provisions of that Chapter in his brief, and it may be assumed that it was, though the fact is not specially material. Under either statute it would seem that the alleged nuisance could have been abated by a proceeding

in court in the name of the state brought by the prosecuting attorney, which appears to have been the procedure as to this property.

The first contention on the part of the appellant, is that the action, based on an alleged liability of defendant as for tort, cannot be maintained for the reason that no recovery in such an action can be had unless the plaintiff is "without fault." And it is argued that since the abatement proceeding was brought against both of the parties to this suit, the plaintiff as the owner as well as the defendant as the occupant of the premises, in the absence of any finding in said proceeding exonerating the plaintiff from knowledge or personal responsibility for the nuisance, he cannot now show that he was without knowledge thereof or not responsible therefor. In other words, the contention in that respect is that the judgment in the abatement proceeding is res judicata upon the subject of plaintiff's knowledge and personal responsibility for the nuisance alleged and abated in that proceeding, on the theory that the plaintiff was found to have been equally guilty with his tenant. What is said by counsel as to the absence of any finding in the order exonerating the plaintiff is, no doubt, based upon what counsel may have known as to the actual contents of the order in that case. But the order is not here, and no words of the finding are here, nor explained otherwise than as aforesaid by the pleadings. If important, it was appellant's duty to see that the files received in evidence were in the record here. Assuming, however, that the fact stated may be true, the judgment in said abatement proceeding is not res judicata in this case upon the question of the knowledge or lack of knowledge of the plaintiff as to the unlawful use of the premises, or of his personal participation in or responsibility therefor. Only adversary parties are estopped or concluded by a judgment under the doctrine of res judicata. 24 Am. & Eng. Ency. L., (2nd Ed.) 731, 732; 23 Cyc. 1237; 1 Freeman on Judg., (5th Ed.,) Secs. 422-25; Dunnett v. Shields (97 Vt. 419) 123 Atl. 626.

The plaintiff and defendant were not adversaries in the abatement proceeding; nor does it appear that any issue was therein raised to be determined as between them, nor that any issue that might have been presented as between them was in fact determined in that proceeding: It is said in Cyc., at the cited page:

To constitute a judgment an estoppel, "there must be an identity of parties as well as of the subject matter; that is, it is necessary that the parties as between whom the judgment is claimed to be an estoppel, must have been parties to the action in which it was rendered, in the same capacities and in the same antagonistic relation, or else they must be in privity with the parties in such former action."

It is said in the latest, the 5th, edition of Freeman on Judgments, Vol. 1, Sec. 422:

"Parties to a judgment are not bound by it, in a subsequent controversy between each other, unless they were adversary parties in the original action. There must have been an issue or controversy between them. The reason for this rule obviously is the same as that which underlies the whole doctrine of res judicata, namely, that a person should not be bound by a judgment except to the extent that he, or some one representing him, had an adequate opportunity not only to litigate the matters adjudicated, but to litigate them against the party (or his predecessor in interest) who seeks to use the judgment against him."

This is emphasized by what is said in the next succeeding section, viz: that it is immaterial in determining the effect of a judgment as an estoppel between the parties to it, whether they were nominally on the same or different sides; if in fact issues were raised and determined between them they are to that etxent bound by the result; and, as a general rule, whenever there has been afforded to co-parties, whether plaintiffs or defendants, an opportunity to litigate a particular issue inter se, they are concluded by the re-

sult; but that "it would seem equally clear on principle that if no such opportunity has been afforded them, they are not bound." And it is said further in that connection in Secs. 424 and 425:

"Ordinarily, however, co-defendants are not adversary parties, since usually no issues are made between them, and a judgment, therefore, cannot generally be used by one against the other as an estoppel, and this is true even though one of them has filed a cross complaint, if the other is not made a party to it, or had no notice of it.    *    *    * As between the several defendants in an action, a joint judgment ordinarily establishes nothing but their joint liability to the plaintiff;    *    *    *. As between co-defendants the judgment adjudicates nothing which might have been, but was in fact not put in issue between them."

The answer denied that any act had been done by the defendant in violation of law, or that any nuisance had been maintained on or about the premises, except with the consent and knowledge of the plaintiff, and alleged that the plaintiff was apprised of the nature of defendant's business and of everything being done, and gave his full consent thereto. But upon the trial the defendant, himself, testified that the plaintiff did not consent to liquor sales or any unlawful or illegal act upon the premises, and gave or offered no testimony that the plaintiff knew of any acts upon the premises in violation of the prohibition law. The plaintiff testified positively that he had no knowledge of any such illegal act upon the premises, or that any illegal business was being conducted there. And we see nothing in the evidence which would have justified the court in finding that the circumstances were such that the plaintiff ought to have known of the illegal acts.

In the further consideration of the case, therefore, the closing of the premises will be assumed to have resulted solely from the unlawful acts of defendant, charged and

found in the abatement proceeding to have been committed by him, without any knowledge of such acts or fault on the part of plaintiff. While the court's order is not in the record, we have these facts in the evidence: The defendant having testified that plaintiff did not consent to any illegal busniess upon the premises, testified further: ''Q. And you were not doing any illegal business there, were you? A. Court said I was, yes. Q. And the things the court said you were doing there that were illegal, were any of those things the things that Mr. Lawer had given his consent to? A. Why, he did not give his consent personally to any part of it. Q. Now, referring to the facts concerning this injunction matter and this liquor charge, directing your attention to those circumstances, you don't mean to indicate that if there was anything down there in the way of liquor selling, Mr. Lawer gave any consent to that, do you? A. Certainly not.''

It appears from plaintiff's testimony, which is uncontradicted, that the defendant Mitts had occupied, as tenant, the east basement room in his said building for several years, paying as rental the sum of $65 a month, and that said sum was the reasonable rental value; that the defendant had occupied the room since about 1917, and under a lease until a short time before it was closed up, when the lease expired; that it expired some three or more months before the first of June, 1921; and that after its expiration, and prior to June 1, the defendant had paid him $65 a month, the same as under the lease. The defendant also testified to the fact that, since the expiration of the lease, without any further understanding between himself and the plaintiff, he had paid the plaintiff $65 on the first day of each month until the building was closed. Under our statute, therefore, the defendant's occupancy of the premises after the expiration of the lease constituted him a tenant by sufferance. McNamara v. O'Brien, 2 Wyo. 447. The statute, enacted in 1875, and remaining unchanged since then, reads as follows:

"Sec. 4621. In this state there shall not exist the relations of landlord and tenant, by implication or operation of law, except a tenancy by sufferance. Upon the expiration of a term created by lease, either verbal or written, there shall be no implied renewal of the same, for any period of time whatever, either by the tenant holding over or by the landlord accepting compensation or rent for or during any period of such holding over. Such holding over by the tenant and acceptance of rent by the landlord shall constitute only a tenancy by sufferance, with the rights, duties, obligations and incidents of such tenancy.

"Sec. 4622. No lease which shall have expired by its own limitation shall be again renewed except by express contract in writing, signed by the parties thereto, whether the original lease be written or verbal. Nor shall any other tenancy than that by sufferance exist after the termination of the original lease, unless created as aforesaid, by express contract in writing." Comp. St. Wyo. 1920.

Counsel for plaintiff, respondent here, directs our attention to the fact that this action is not one to recover rent, and that the matter of rent is important only because rental value furnishes the measure of damages. And counsel for appellant, defendant below, seems to contend that it was plaintiff's duty, having knowledge of the cause for the abatement before the action therefor was begun, to have evicted the defendant, and therefore cannot now be heard to say that he had been injured. But, as above stated, the plaintiff was not shown to have had knowledge of the liquor law violations. The mere failure to evict, however, with or without knowledge of the illegal acts, we may suppose would have been immaterial. Defendant's counsel states further that he agrees with counsel for plaintiff that the record does not disclose "a termination of the tenancy by either of the parties." We understand that both parties concede that the action is one in tort for causing the closing of the premises and the loss of the rental value through the main-

tenance of a public nuisance thereon. And we think it maintainable, and that the judgment may be sustained upon that theory, under the general rules declaring liability for torts, and a consideration of defendant's duty under the circumstances of his occupancy not to use the property so as to bring injury to the landlord. 38 Cyc. 415, and notes; Acker v. McGaw, 106 Md. 536, 68 A. 17; 2 Underhill, L. & T. Sec. 466; 36 C. J. 85, Sec. 710; 35 C. H. 1221, Sec. 555; Fogarty v. Junction City Pressed Brick Co., 50 Kan. 478, 31 Pac. 1052, 18 L. R. A. 756; Kurrus v. Seibert, 11 Ill. App. 319; Thompson v. Ackerman, 21 O. C. C. R. 740; Wineburgh Adv. Co. v. Faust Co., (Sup.) 113 N. Y. Suppl. 709. It is said in the Maryland case:

"A person commits a tort, and renders himself liable to an action for damages, who commits some act not authorized by law, or who omits to do something which he ought to do by law, and by such an act or omission either infringes some absolute right, to the uninterrupted enjoyment of which another is entitled, or cause to such other some substantial loss of money, health or material comfort, beyond that suffered by the rest of the public. Moak's Underhill on Torts, 4. The two essential elements, therefore, necessary to sustain the action are (1) A wrongful act or omission of duty by the defendant; and (2) Damage or loss to the plaintiff in consequence of such act or omission."

In Advertising Co. v. Faust, Co., supra, the court said:

"Applying a trite maxim, the plaintiff might not use the property demised to its possession, or licensed to its enjoyment, so as to bring injury to its landlord. Thus　*　*　* the lessor was entitled to anticipate and assume as an implied provision in the letting and the hiring that the lessee would not affront the statutes or violate ordinances having the force of statutes, and that, if the lessee offended against either, the lessor might resort to the courts for protection, or treat the agreement as broken."

It is said in Underhill at the section cited that a landlord has a right to assume that a tenant who rents premises for a particular business will carry on that business in a proper and lawful manner; and that if, when making the lease, he is ignorant of the improper mode in which the tenant intends to and does in fact conduct his business, the landlord may recover damages for whatever injury may result to him thereby.

A statement of the general duty of the tenant found in Thompson v. Ackerman, supra, is worthy of quotation here. The action was forcible entry and detainer to recover possession because of an alleged forfeiture of the lease because of the use of the premises for gaming purposes; and it appeared that the statutes provided that if the *owner* of a building knowingly permits it to be used for gaming purposes, such building, and the real estate upon which it stands, shall be liable to the recoverable fines, damages and costs. The court said:

"The liability to loss of his property placed upon the landlord, whether he be the lessor or the grantee of the lessor; the violation of his common law duty by the tenant who conducts gambling upon the leased premises; the purpose of our legislation, which is effectual to suppress gambling, the duty of the landlord, which is to hinder or prevent the unlawful acts upon his premises, all permit, if indeed they do not require the lessor's grantee to hinder gambling upon his premises by expelling therefrom a tenant whose criminal acts may deprive a landlord of his entire estate in reversion. Having imposed this liability upon the land owner, it would seem a hardship if a way in harmony with the spirit of the legislation were not provided by which the liability could be avoided. We believe that that way has been provided by the common law and it must be held that it is a tacit condition annexed by law to all tenancies that the lessee or his assignee will not by his unlawful acts cause a forfeiture of the landlord's estate, or by such act create an en-

forceable lien upon the landlord's interest in the leased premises."

In Fogarty v. Pressed Brick Co., it appeared that the Brick Company had leased from the plaintiff about two acres of his farm lands and was to have the use of the water power owned by the plaintiff to run its brick press; that when the lease was made the plaintiff was unacquainted with the methods to be used by the company in burning brick. That the company erected kilns upon its said two acres, and burned several kilns of brick therein, using bituminous coal in considerable quantities, and that by such methods a quantity of corrosive gas was generated and allowed to escape from and above the kilns and disseminate by the wind for quite a distance over and upon the growing crops of the plaintiff. The action was brought to enjoin the defendant from using said coal and other combustible material injurious to plaintiff's crops, and for damages. It was held that the land owner was not estopped from claiming damages for the injuries caused by the nuisance, since he had a right, when leasing the land, to presume that the process used in burning the brick would be a reasonable and lawful one. In the court's discussion the general rule appears to have been deemed applicable as between the landlord and tenant, that every one is bound to such a reasonable use of his own property as to not occasion unnecessary annoyance or damage to his neighbor; and that an unreasonable or unlawful use of it, producing material injury or great annoyance to his neighbor, will be a nuisance, rendering him responsbile for resulting damage.

Kurrus v. Seibert was an action by a tenant against the landlord for having excluded him from the possession of the demised premises; the landlord seeming to have so acted because of a nuisance committed by the defendant upon the premises. The point in the case material here arose from an instruction to the effect that the landlord had no right to retake possession, forcibly and without the tenant's consent,

either for the nonpayment of rent, or for a nuisance committed by the tenant. The court said that "it must be apparent that if the act of the plaintiff caused such a nuisance as described by the defendant and some of the witnesses, he had a right to abate it: Wood on Nuisances, Chap. 31." As laid down generally upon the subject of nuisances, where a private party has been specially damaged by a public nuisance, his damage differing in kind and degree from that of the general public, he may maintain an action to abate it, and may also sue and recover damages therefor. And it is said that a landlord may have a right of action where the wrongful acts affect his interest in the property, though the question as to which party (landlord or tenant) is entitled to recover as against others for depreciation of rental value by the existence of a nuisance is involved in some perplexity. Joyce on Nuisances, Sec. 443. In discussing this ground for maintaining the action, we have not lost sight of the fact that the defendant here was only a tenant by sufferance. But that gave him no greater right than that possessed by any other kind of tenant or occupant as to the use of the property. He had a bare naked possession, and that was wrongful, dependent alone upon the permission or laches of the landlord. McNamara v. O'Brien, supra.

While the ground upon which the petition is supposed to have been framed,—commission of a nuisance to plaintiff's injury,—must be held, for the reason stated, sufficient to justify the action and sustain the judgment, it is not the only ground upon which, under the averments of the petition, the action may be maintained. A tenancy at sufferance is defined generally as one created by the wrongful holding over and remaining in possession of a tenant whose original entrance upon the land was lawful. 1 Underhill, L. & T., Sec. 162. "A tenancy by sufferance generally arises at common law where a tenant holds over without the consent of his landlord, and merely through the laches of the latter, after the expiration or determination of the tenancy." 35 C. J. 1135, Sec. 372. And, at common law, it is said that

a tenant who holds over without any new or different agreement as to rent, subjects himself to a renewal or continuance of the liability to pay rent as fixed by the terms and conditions of the prior lease; such liability being imposed at the election of the landlord, and subject to the ordinary rules as to the duration of the new term created by the holding over, though any implication as to the renewal of the obligation to pay rent must yield to the contract, either express or to be implied from the circumstances.   36 C. J. 293, Sec. 1060.

But under our statute aforesaid no tenancy may be implied in the absence of written agreement after the expiration of a term except a tenancy by sufferance.   Construing that statute, it was said in McNamara v. O'Brien, supra, that the tenant, being in by mere permission, had the right to leave at any time he sees fit, "and of course is liable not as a tenant by the year, or by the month, but only at best for the actual time that he may be in possession of the premises,   *   *   *   and then not recoverable under an action on the lease, but to recover at all, it should be for an actual holding over or occupancy by a tenant by sufferance, *   *   *." The right to recover the amount claimed in that case was denied for the reason that the petition was not properly framed for a recovery except upon a lease; the fact of a new lease being a disputed fact in the case.   But the court said that the petition might possibly be amended "for the purpose of a recovery as against a tenant by sufferance."

Thus the court in that early case recognized the liability of a tenant at sufferance to damages in an action for use and occupation.  And that is the rule applied in many cases in this country and in England, notwithstanding the usual statement that at common law a tenant by sufferance is under no obligation to pay rent, since such an obligation is usually the result of a contract or reservation, which does not exist in the case of a true tenant at sufferance at common law.   2 Tiffany L. & T., Secs. 211, 212, and cases cited in

note 119, page 1422. It is said in section 211 that such a
liability has been imposed when the tenant himself is not in
possession, but the holding over was by a sub-tenant, with-
out the tenant's consent, and that in such an action the ten-
ant is liable for the reasonable value of the use and occupa-
tion of the premises, which, while presumably to be regard-
ed as prima facie equal to the rent reserved by the lease, in
the absence of evidence to the contrary, it may be either
more or less, as may appear proper by the evidence. It is
also stated in that section that in some of the states, it is
expressly provided that tenants at sufferance in possession
shall be liable to pay rent for such time as they occupy or
detain the premises. And in section 212 it is said that it is
immaterial, for most purposes, whether the landlord brings
an action for tort for damages for holding over, or an action
for use and occupation, which, as stated in section 211, he
has the right to bring.

It is said in Underhill L. & T., Vol. 1, Sec. 171, that while
at common law "rent as such" is not recoverable by the
landlord from tenants at sufferance, where "a tenant at
sufferance is permitted to continue in occupation of the
premises by the consent of the landlord, either express or
implied, he is thereafter liable for the rent which may be
recovered at common law by means of an action based on
the fiction of an implied promise on the part of the tenant
to pay what the use and occupation of the premises are
reasonably worth to him." It was held in Massachusetts
in Emmons v. Scudder, 115 Mass. 367, Devens, Justice, de-
livering the opinion, that a tenant at sufferance, by the com-
mon law, was not liable for rent as such, although liable for
the fair value of the premises for use and occupation, and
the landlord was entitled to resume possession, and the ten-
ant to quit the premises, at any time, citing Merrill v. Bul-
lock, 105 Mass. 486. In the case, so cited, by the opinion
of the court delivered by another eminent American jurist,
Mr. Justice Gray, after referring to the common law rule

that tenants at sufferance were not liable to pay rent, "strictly so-called," it was said:

"But a tenant at sufferance, occupying by permission of the landlord, was liable, upon an implied contract, in assumpsit, for use and occupation of the premises. Ibbs v. Richardson, 9 Ad. & El. 849, and 1 Per. & Dav. 618. Christy v. Tancred, 7 M. & W. 127, Same v. Same, 9 M. & W. 438, and 12 M. & W. 316. If, however, the facts would not warrant the inference that he ever occupied the premises by contract, express or implied, with the owner, but showed that he asserted an adverse title, he was not liable to such an action." And the learned justice further stated that it had been assumed by Mr. Justice Wilde in Keay v. Goodwin, 16 Mass. 1, and by Chief Justice Shaw in Gould v. Thompson, 4 Metc. 224, that either a tenant at will, or a tenant at sufferance, occupying by the permission of the landlord, was liable to him in an action of assumpsit for use and occupation.

So in the case decided in our own court, McNamara v. O'Brien, supra, it was said in the dissenting opinion of Mr. Justice Peck, who dissented only on the ground that the right to assert error had not been preserved by proper exception, that the contract, "which appears in the proofs, is a tenancy by sufferance, arises by implication, and is no more than what would arise," thereby affirming the proposition that under our statute, as well as at common law, a tenancy at sufferance is a relation implied from the facts, which seems to be a correct interpretation of the provisions of our statute above quoted, declaring that the relation of landlord and tenant shall not exist by implication or operation of law, *except* a tenancy by sufferance. See also Canning v. Fibush, 77 Cal. 196, 19 Pac. 376; Harris v. Foster, 97 (Cal.) 292, 32 Pac. 246, 33 Am. St. Rep. 187; Power Merc. Co. v. Moore Merc. Co., 55 Mont. 401, 177 Pac. 406; Williams v. Ladew, 171 Penna. 369, 33 Atl. 329. The court said in the case last cited:

"At common law, tenants at sufferance appear not to have been liable for rent, and some expressions of that kind are to be found in our own earlier cases; but in Bush v. Refining Co., 5 Wkly. Notes Cas. 143, it was expressly held that such tenant is liable in assumpsit for use and occupation for the interval between the termination of the lease and the election of the lessor to treat him as a trespasser."

The Supreme Court of Montana in Power Merc. Co. v. Moore Merc. Co. said:

"If Samuell was a tenant at will, he is liable ex contractu for rent eo nomine; if he was a tenant by sufferance, he is at least liable ex delicto, under sections 6069 of the Revised Codes, for a sum equal to the value of the use and occupation of the land during his wrongful possession of it."

We find nothing in our said statute to indicate an intention to permit holding over by the tenant after the expiration of his term without an obligation to pay the reasonable value of the use of the premises, and thus leave the landlord without remedy except that of forcible eviction. And we think the decision in McNamara v. O'Brien, supra, may be accepted as expressing the view of the court at that time that a liability for damages, to be measured by the reasonable value of the use and occupation, might be recovered. We think also that the averments of the petition are sufficient for such a recovery. 1 Nash. Pl. & Pr. 356-7, 381; 2 Ency. Pl. & Pr. 1026; 39 Cyc. 865-6.

Upon the facts alleged and established by the evidence, the defendant must be regarded as having remained in possession of the premises, as between himself and the plaintiff, until they were returned to the plaintiff's possession. The business conducted by defendant on the premises before it was closed is referred to in the testimony, generally, as a pool hall and billiard parlor, or pool hall and bowling alley; and it appears that all the fixtures and personal property

in the place belonged to the defendant, which he described in his testimony as consisting of "Bowling alley and fixtures, cigar case, etc., stock", and the "stock" as consisting of "candy, cigars, tobacco." He also testified that when the place was reopened and the defendant's property turned over to the new tenant there was about $250 or $300 difference in the condition of the same from the time the place was closed. The plaintiff had testified that defendant had placed a price upon the same after the closing order of either thirty or thirty-five hundred dollars.

It appears also that while the place was closed by the sheriff, the defendant made several overtures or inquiries toward a re-opening of the place, and found that it might be re-opened upon the giving of an acceptable bond by the owner or himself, and that plaintiff declined to give a bond. And he admitted that he wanted to get the place re-opened, not, as he said, to conduct it as proprietor, but, as seems to be indicated by his testimony, to obtain control of his property that it might be used or disposed of. Thus he testified:

"Q. And did you make any arrangements yourself, so far as your part was concerned, with reference to opening the premises? A. I came up here with Mr. Slater, and I think talked with Mr. Michels, (the county attorney) and I understood if I paid the costs, he was satisfied with the tenant, he could have the place re-opened. Q. Did you at any time make any application or request for the permission to re-open the premises with yourself as the tenant? A. Never did. Q. And upon the closing of the premises and your investigation as to the manner in which the premises could be opened, was it ever contemplated by yourself that you would occupy the premises yourself if they were opened? A. No, never did."

On cross-examination:

"Q. Mr. Mitts, in conversation with Mr. Michels in July, in which you said that Mr. Michels had notified you, or stat-

ed if bond was given and the costs were paid, the place could be re-opened; you recall that conversation? A. He didn't say that. Q. What did he say? A. He said he would take it up with the judge under those conditions; see if it could be. Q. That he would recommend that being done? A. Recommend, yes. Q. Was that on condition you might be a tenant of this place? A. No sir. Q. It had nothing to do with your tenancy? A. Nothing to do with my tenancy, no. Q. At the time you were talking to Mr. Michels were you asking for permission to get his consent, for you to open up the place yourself? A. Not myself; I wanted it opened up so I could handle this stuff; sell it or lease it. Q. Did you ever bring Mr. Lawer a tenant for that place prior to the time of Mr. Slater, in the latter part of November that year? A. Yes, I did. Q. Who? A. I can't recall his name now; he lives there in Riverton; I wanted to trade for it; I asked Mr. Lawer, if I put up a bond I could do business with this man, he said no. Q. He had no objection to your doing business with the buyer of your place? A. Not that I know of. Q. All of the conversations you had with Mr. Lawer relative to opening up the place, were based upon Mr. Lawer putting up a bond as required by statutes, were they not, Mr. Mitts? A. At that time, yes. Q. Then you never made any application to Mr. Lawer for permission to sell out or to get his consent to open up that place, except upon condition that he would put up a bond, isn't that true? A. Well, it was my idea it was the only way it could be opened. Q. Yes, now personally you stated that you personally didn't care anything about opening up the place yourself? A. Certainly, I wanted it opened, but I didn't intend to run it. Q. Well, I mean opening it up as a proprietor. A. No sir. Q. All you really wanted to do was to open it up so you might sell your fixtures and stock? A. Sell my stock.''

It appears that the place was finally opened with Mr. Slater as the tenant, who, as we understand, purchased or arranged otherwise to use the fixtures and personal prop-

erty. It is thus clear from the facts as stated that possession after the termination of the lease was not returned by the defendant to the plaintiff, or to the plaintiff at all, nor the premises actually vacated by defendant, until arrangements had been made for a dissolution or suspension of the order closing the place; and that was upon plaintiff's application, as we undertsand, though that may not be material.

The fact that plaintiff refused to furnish the bond authorized by the statute and thereby have the place re-opened earlier furnishes no legal or reasonable ground of objection to his right to recover in this case. He was under no obligation whatever to the defendant to furnish that bond; the closing having been the result solely of the unlawful acts of the defendant. For the same reason we think it unnecessary to consider the points discussed in the briefs and argument with respect to the right of the state to abate a nuisance under the statute in question against a landlord or owner who was without knowledge of the nuisance and in no way at fault. The plaintiff was under no obligation to defendant to contest that question with the state, either on behalf of the defendant or himself. The order was made and entered and the premises actually closed, and there is nothing here to show that any appeal was taken from the abatement and closing order, and so far as this case is concerned it must stand as having been a valid and subsisting judgment. Certainly none of the points discussed as to the validity or construction of the statute respecting the liability of the landlord in an abatement proceeding can affect the plaintiff's right in this case to recover upon the alleged and proven facts.

For the reasons stated, the judgment must be affirmed, and it will be so ordered.

*Affirmed.*

KIMBALL, J. and TIDBALL, D. J., concur.
BLUME, J., did not sit.