# Dugger *v.* Collins & McRae.

*Bill in Equity for Settlement of Administration, and Appointment of Receiver, and Petition by Purchaser at Sheriff's Sale to be substituted to Share of Devisee.*

1. *Mortgage; when execution of neither attested nor acknowledged.* Where a mortgage was signed by the husband, and beneath his signature thereto the wife on the same day added: "I hereby join in the execution of the foregoing conveyance, in token that I relinquish all claim of dower in said premises," affixing her signature and seal; to which a justice of the peace added a certificate in these words: "Sworn to and subscribed before me this day," bearing date seventeen days after the mortgage,— *held*, that the mortgage was neither attested nor acknowledged, and that it was, therefore, inoperative for any purpose.

2. *Same; execution of.*—The face of such paper clearly indicates that the certificate of the justice of the peace refers to the signature of the wife, which last precedes it, and not to that of the husband.

3. *Same; when not self-proving, admission by mortgagor of its execution no evidence against stranger.*—A mortgage of land, to be self-proving under the statute, must be properly acknowledged and certified, and recorded in the county in which the land is situate, within twelve months after its execution; and when not acknowledged, an admission of its due execution by the mortgagor, while sufficient as against him, is no evidence against a stranger claiming an interest in the land.

4. *Lands in possession of receiver can not be sold under execution.* When real estate is in the custody of a receiver, it is *in gremio legis*, and a sale thereof under execution issued on a judgment at law is illegal and void.

5. *Same.*—A creditor of a devisee, the estate of whose testator was in the possession of a receiver appointed in a suit pending in a court of equity for the settlement and distribution thereof, obtained a judgment prior to the appointment of the receiver, but failed to acquire a lien by placing an execution in the hands of the sheriff until after such appoint-

[Dugger v. Collins & McRea.]

ment; and afterwards he purchased at sheriff's sale made under execu-
tion issued on the judgment, but without the leave of the court of equity,
the devisee's interest in certain lands belonging to the estate and then in
possession of the receiver, receiving the sheriff's deed therefor,—*held*,
on the petition of the creditor filed in the administration suit, seeking to
be substituted to the rights of the devisee in and to the lands,

(*a*) That he acquired no title by the sheriff's sale and the deed executed
thereunder.

(*b*) That even if he had acquired title, its acquisition would have been
in disregard of the court's possession and custody of the property, and
no sanction could be given to such irregular proceedings, by putting him
in possession of property, the title to which had been thus acquired.

APPEAL from Hale Chancery Court.
Heard before Hon. CHARLES TURNER.
The facts are stated in the opinion.

JAMES E. WEBB, for appellant.

THOS. SEAY, and THOS. R. ROULHAC, *contra*.

(No briefs came to the hands of the reporter.)

STONE, J.—The contest in the present suit arises out of
conflicting claims to the interest of H. C. McRae in the real
estate of his deceased mother, Mrs. Josephine McRae. She
left a will, which was admitted to probate, but under a written
agreement entered into between the devisees and certain of the
heirs, the estate was finally partitioned and distributed, in some
respects different from the provisions of the will. No question
is here raised as to the construction of Mrs. McRae's will, the
proceedings by which its administration was carried into the
Chancery Court, nor as to the correctness of the partition and
distribution therein made. As we have said, the present con-
tention is over the share of the lands partitioned to Henry C.
McRae. His allotment fell entirely in Marengo county.

Mrs. McRae's last residence and administration were in Hale
county. Her will, dated in 1869, was admitted to probate in
March, 1870, and an administrator with the will annexed then
appointed. In April, 1873, the bill, which is the foundation of
the present proceedings, was filed, and in December, 1874, a
receiver was appointed, the entire property of the estate, real
and personal, placed in his hands, and the administration re-
moved into the Chancery Court, in which all the after proceed-
ings of the administration were had. The conflicting claims to
H. C. McRae's part of the land arise as follows:

Charles W. Collins claims under a writing, which he sets up
as a mortgage. It assumes to convey to Collins all right, title
and interest of H. C. McRae in the estate, real and personal, of

[Dugger v. Collins & McRae.]

Josephine McRae, deceased, to secure the payment of a note of six hundred and twenty dollars, due January 23d, 1873. This paper writing is signed as follows:

"Witness my hand and seal, this 23d day of January, 1872.

H. C. McRAE. [L. s.]

"I, Sophia McRae, wife of the said H. C. McRae, hereby join in the execution of the foregoing conveyance, in token that I relinquish all claim of dower in said premises to said Collins. Witness my hand and seal, this 23d day of January, 1872.

S. J. McRAE. [L. s.]

"Sworn to and subscribed before me, this 9th day of February, 1872.

PETER LYDON,

Justice of the Peace, Hale Co., Ala."

The foregoing contains all that is shown by the paper, there being neither subscribing witness, nor certificate of acknowledgment. This paper was filed for record in Hale Probate Court on the 14th February, 1872, and was soon afterwards recorded. It was filed for record and recorded in Marengo Probate Court November 23d, 1877. On the 2d day of April, 1877, the said Collins filed his petition in said administration cause, setting up his said alleged mortgage, and, without asking to be made a party to the suit, prayed that the said mortgage be foreclosed, and the said interest of the said H. C. McRae be applied to the payment of his said claim. He made no one party defendant to his petition, prayed no process, and none was issued or served. The prayer was, that the court "make all such necessary orders and decrees in the settlement and distribution of the said estate of Josephine McRae, deceased, as shall secure to petitioner the enforcement of his claim against the share of the said Henry C. McRae, and that the amount to which he is entitled, or so much thereof as may be necessary to pay said note may be decreed to petitioner, and paid to him on the settlement of said estate."

W. W. Dugger's claim is as follows: On the 28th of March, 1874, he recovered a judgment in Hale Circuit Court against Henry C. McRae for the sum of $170.40 and costs of suit; and soon afterwards an execution was issued on said judgment, placed in the hands of the sheriff of Hale county, and by him returned no property found. On the 9th day of October, 1877, an *alias* execution was issued on said judgment, which was placed in the hands of the sheriff of Marengo county, 15th November, 1877, and was on that day levied on H. C. McRae's interest in that part of the lands of Josephine McRae, deceased, which lie in Marengo county. Having advertised the same, the sheriff of Marengo county sold said interest on the 7th day of January, 1878, and W. W. Dugger became the purchaser, and received the sheriff's deed therefor, dated April 1st, 1878. An execu-

tion was also issued on said judgment, on the 13th November, 1877, was received by the sheriff of Hale county, and on the same day was levied on the lands of Josephine McRae's estate which lie in Hale county, as the property of Henry C. McRae. This property was sold by the sheriff of Hale, January 14th, 1878, was purchased by W. W. Dugger, and sheriff's deed made to him on the same day:   On the 11th day of November, 1878, said W. W. Dugger filed his petition in said administration cause, in which he set up his claim to Henry C. McRae's interest in said estate, under the two sheriff-sales, his purchases thereunder, and the sheriffs' conveyances to him.   He made said H. C. McRae a party; prayed process against him, and prayed to be "made a party to said cause, to have his rights in said property adjudicated and protected."   He prayed also that the court would, "by appropriate decree, order and direct that petitioner be substituted to all the rights of the said H. C. McRae in and to said lands, and that the proceeds of ·his interest therein be paid to your petitioner"

On the 2d day of December, 1879, Henry C. McRae, through counsel, put in a joint answer to the two petitions by Collins and Dugger, in which he admitted "that he and his wife executed the said mortgage to C. W. Collins in the presence of Peter Lydon, J. P., who then and there subscribed his name as shown by said mortgage, and that [the] mortgage debt remains due and unpaid."   He claimed that Dugger's purchases at sheriffs' sales were inoperative and void, because the property was then in the hands of the receiver appointed by the Chancery Court.

Said administration cause came before the chancellor for final hearing and for distribution, and he rendered his decree, October 30th, 1879.   Among other matters, he decreed and ordered that the register of the court make partition of the lands among those entitled under the will of Mrs. Josephine McRae and the written agreement of the parties, he, the chancellor, determining and decreeing the number of shares into which the lands should be divided, and the persons who should take those shares, as first takers.   To H. C. McRae was allotted one share, but this was to remain subject to the rights and claims of his creditors, to be settled and determined by future decree.   The register made his report of partition, which was confirmed by the court, December 2d, 1879.   By that report and confirmation, there was allotted to H. C. McRae the west half of the west half of section 24, township 18, range 3 east—about 160 acres—lying in Marengo county.

The controversy over the conflicting claims of Collins and Dugger to the share allotted to H. C. McRae, was then submitted to the chancellor on their several petitions.   For Collins,

the submission was made on the papers mentioned and described above, supplemented alone by the written admission of counsel for H. C. McRae, "that the instrument of which Exhibit B [the mortgage] to Collins' petition is a copy, was executed by the said H. C. McRae and his wife, S. J. McRae, on the day the same bears date, for the purposes therein stated, in the presence of one Peter Lydon, who attested the same as a subscribing witness, and the amount of said note remains due and unpaid, with the interest thereon." Dugger submitted with his petition the records and documentary proofs, stated above in giving a description of his claim. The chancellor decreed that Collins was entitled to a first lien, to be paid out of said lands, and Dugger to a second lien on the lands, for the collection of his judgment. He set aside Dugger's purchases at sheriffs' sales, on the ground that the lands were then in the possession and control of a receiver appointed by his court. That decree is here assigned as error.

There are several grounds on which the decree of the chancellor must be reversed. The paper called a mortgage is without a subscribing witness, and without any certificate of acknowledgment. The certificate of Lydon, the justice, is in no sense a certificate of acknowledgment. In its present form, and in the present state of the proof, that paper must be treated as if that certificate were not upon it. Aside from its fatal defects of substance, it bears date seventeen days after the date of the signatures to the paper; a strong circumstance to show that his certificate furnishes no evidence that the paper was signed in his presence. Being without subscribing witnesses, and without a certificate of acknowledgment, such as the law can recognize, the paper is void as an instrument conveying any interest in real estate.— *Wilson v. Glenn*, 62 Ala. 28; *Harrison v. Simons*, 55 Ala. 510; *Lord v. Folmar*, 57 Ala. 615.

Again. To the present controversy Dugger is a material, and very important party. The paper called a mortgage is not self-proving. To be so, it must have been properly acknowledged and certified, and recorded in Marengo county within twelve months after its execution. Neither of these essentials was observed in this case.—*Harrison v. Simons*, 55 Ala. 510; *Sharpe v. Orme*, 61 Ala. 263. Now, while the admission made by H. C. McRae of the due execution and attestation of the instrument may have been sufficient as against him, it was no evidence whatever against Dugger; and the chancellor, therefore, had no evidence whatever, as against him, Dugger, that the paper was executed.

A further view. The certificate of the justice, "sworn to and subscribed before me this 9th day of Feb'y, 1872, Peter Lydon, Justice of the Peace, Hale Co., Ala." is appended to the

[Dugger v. Collins & McRea.]

paper and signature of Mrs. Sophia McRae, and contains no reference to the signature of H. C. McRae. The face of the paper indicates clearly that this certificate refers to the last antecedent conveyance.—*Doe ex dem. v. Wilkinson*, 21 Ala. 296; *McBryde v. Wilkinson*, 29 Ala. 662; *Doe ex dem. v. Wilkinson*, 35 Ala. 453. The claim of Collins is utterly unsupported, and the chancellor erred in decreeing its allowance.

The appellant, Dugger, makes out a clear right to the land, if his purchase at sheriff's sale is not, under the circumstances, void. The specific objection to the validity of that sale is, that the land was then in the hands of a receiver appointed by the Chancery Court—was constructively in the custody of the court—and that no action could be taken, or suit brought, affecting the right or title to the property, without first obtaining the permission of the court therefor; and such permission was not obtained. The foundation of the original bill in this cause is the alleged want of diligence and activity of the administrator with the will annexed, in the conduct of the administration, growing out of his failing health, and failure to carry out the intention of the testatrix, as expressed in the will. The result of the suit was the appointment of a receiver, and a transfer to him of all the property, effects, powers and functions of the administration. He became *quasi* administrator, and administered the estate under the control and direction of the Chancery Court. The will made such disposition of the property, as that, until the final decree, it could not be known with any proximate certainty, to what extent the property, real and personal, would be consumed in the payment of debts, pecuniary legacies, and the charges the will fastened on the estate. If any thing should be left for partition or distribution, its value could not be known, nor could any safe estimate be made of the value of the respective shares that would be allotted to the several claimants. This value might be unequal by reason of partial distribution, if for no other cause. If the land, or a part of it was saved for division, it could not be affirmed it was susceptible of equitable partition, without a sale and conversion of it into money. Nor, if partition should be ordered and made, could it be known whether H. C. McRae's share would fall in Hale or Marengo county. Now, the possession and control of the entire estate, real and personal, were placed in the hands of the receiver, or rather, taken charge of by the Chancery Court, to be preserved and administered, until time should solve these problems, and point out the proper disposition to be made of the assets. In the incertitude which then enveloped the estate, it requires no argument to show that any purchase of H. C. McRae's interest would be the merest conceivable speculation. If the sale and purchase were made as of real estate, the estate

might all become money, as a necessary means of division. If of personal estate, the residuum might consist entirely of lands for partition. If the lands were levied on and sold in Hale, the share allotted to H. C. McRae might fall in Marengo, and *e converso*. So, the necessary result of allowing and sanctioning such sale would be a probable sacrifice of the interest sold. It would tend to another injurious result. A purchase so made would probably generate and intensify an interest and desire in the purchaser, to so shape the after administration of the trust, and the partition and distribution of the estate, as most to augment the value of the interest purchased, and in the form in which he had purchased it. And it might engender a like interest and desire in some adversary claimant to the opposite result, for the opposite purpose. All these probable, opposing influences would be detrimental to that faithful impartiality a receiver should always observe. These considerations, we hold, should exert their influence, aside from the principle presently to be considered.

The possession of the receiver is the possession of the court. "When such a receiver is in possession under the process or authority of the court, in execution of a decree, or decretal order, his possession is not to be disturbed, even by an ejectment under an adverse title, without the leave of the court. For his possession is deemed the possession of the court; and the court will not permit itself to be made a suitor in a court of law." 2 Story's Eq. Jur. § 833 *a*. "So extremely jealous are courts of equity of any interference, *pendente lite*, with the possession of their receivers, that they will not ordinarily permit property which is the subject of the receivership to be sold on execution. And when a sheriff has levied upon property in the hands of a receiver, equity will not interpose by an injunction in behalf of the sheriff, to restrain an action at law against him for such interference. The proper remedy for a judgment creditor, who desires to question the receiver's right to the property, is to apply to the court appointing him, to have the property released from the receiver's custody, in order that he may proceed against it under his judgment. Since to permit the property, while in custody of the receiver, to be levied upon and sold under the process of another court, would at once give rise to a conflict of jurisdiction, and would seriously interfere with and impair the receiver's right to the management of the property under his appointment."—High on Receivers, § 141. See also 5 Wait's Actions and Def. 354; *Angel v. Smith*, 9 Ves. 335; *Fessenden v. Woods*, 3 Bosw. 550; Rorer on Jud. Sales, § 709; *Parker v. Browning*, 8 Paige, 388; *Field v. Jones,* 11 Ga. 413; *Wiswall v. Sampson*, 14 How. U. S. 52, 65.

It is urged for appellant that it is only the *possession* of the

[Dugger v. Collins & McRae.]

property in the hands of the receiver, which may not be disturbed, and that the rule does not inhibit a mere levy and sale of lands which in no sense interfere with the receiver's possesion. *Albany City Bank v. Schermerhorn*, 9 Paige, 372 is cited in support of this view. In that case the creditor, who caused the land to be levied on, had obtained his judgment and thereby fastened a lien on the land, before the bill was filed under which the receiver was appointed. High on Receivers, § 171, referring to this case, says: " When a receiver is in the actual possession of the defendant's real estate, which is subject to the lien of a judgment against the defendant, the levy upon, and sale of the defendant's interest in the real estate by a sheriff, does not disturb the receiver's possession, and is not a contempt of court." *Ib.* § 141. The case referred to fully sustains what Mr. High gives as the principle of it. Against the right, however, to levy on and sell lands in the hands of a receiver, are *Wiswall v. Sampson*, 14 How. U. S. 52; *Robinson v. Railway Co.*, 66 Penn. St. 160; Freeman on Executions, § 129. In *Wiswall v. Sampson*, the ruling was, that when real estate is in the custody of a receiver appointed by a court of chancery, a sale of the property under execution issued by virtue of a judgment at law, is illegal and void. So, in *Robinson v. Railway Co.*, the court, speaking of real estate in the hands of a receiver said : " It was then in *gremio legis*, in legal custody, and to permit it to be levied on and sold under the process of the court of common pleas, would at once raise a conflict of jurisdiction, and interefere with the right of the receiver of the Supreme Court to manage the property under his appointment." In Freeman on Executions, § 129, it is said : "When a court of equity has acted by taking property into its possession by the appointment of a receiver, such property, whether real or personal, is clearly in *custodia legis*." See also *Martin v. Davis*, 21 Iowa, 535; *Bentley v. Shrieve*, 4 Md. Ch. Dec. 412. In the present case, although Dugger obtained his judgment before the receiver was appointed and the property placed in his hands, he did not acquire a lien by placing executon in the hands of the sheriff of Marengo county until long afterwards. We concur in the opinion announced in *Wiswall v. Sampson*, *supra*, and hold that the levy and sale under Dugger's execution conveyed no title. If we doubted on this subject, there is another principle on which no relief should be granted on Dugger's petition. His title was acquired in disregard of the possession and custody of the lands, which the Chancery Court had acquired, and without obtaining or asking the leave of the court to institute such proceedings. The court of chancery will not sanction such irregular proceedings, by putting a party in pos-

[Alexander v. Wheeler.]

session of property, the title, or seeming title, to which he has thus acquired.

The result of what we have said is, that neither Collins nor Dugger has shown a right to relief under their several petitions.

Reversed and remanded.