(October Term, 1936)

## TIBBALS, ET AL. v. GRAHAM, ET AL.

(No. 1978; October 7, 1936; 61 Pac. (2d) 279)

(Rehearing denied November 24, 1936, 62 Pac. (2d) 285)

278

For the appellant, there was a brief and the cause was argued orally by *John J. Spriggs* of Lander.

For the respondents, there was a brief and the cause was argued orally by *George F. Dobler* and *H. S. Harnsberger,* both of Lander.

ILSLEY, District Judge.

This is an action in ejectment brought by the plaintiffs and appellants against the defendants and respondents claiming fee title and the right to possession of certain mining property described in the petition, by reason of a judicial sale held October 15, 1932. We refer to the parties herein in the same manner as set forth in the pleadings in the trial court. The defendant by his answer entered a general denial,

admitting, however, that as receiver he was and is in possession. In his cross-petition defendant sets forth that by reason of the Midwest Mines Corporation's lease on the mining property involved herein, it took possession of and operated the property, spending approximately $70,000 thereon and that numerous persons became entitled to liens upon the property for labor and materials; that the defendant in Case No. 4561 in the district court for Fremont County on November 3rd, 1930, was duly appointed Receiver of Midwest Mines Corporation, and has ever since been the receiver acting under the direction of the court, in caring for and preserving the property; that plaintiffs demanded possession and have been refused; that plaintiff's claim of title is based upon a judicial sale held October 15th, 1932, at which sale plaintiffs sought to obtain title to the mining property by reason of a court decree theretofore rendered, holding this property in trust to secure the payment of $17,500 to plaintiff Barney Tibbals; that on the 23rd day of August, 1932, and prior to the judicial sale, plaintiff Tibbals and others entered into an agreement as respects to bids that were to be offered at the sale. The agreement in full is attached to the cross-petition as an exhibit. Defendant further alleges that this agreement "chilled, and stifled free, fair and competitive bidding and resulted in securing at the purported judicial sale of a less bid for the property than would otherwise have been received"; that this agreement came to the actual notice of expectant and prospective bidders, and therefore the price bid and received and accepted for the sale of the property was grossly inadequate and disproportionate to the real and actual value of the property and was a fraud upon the defendant and the claimants seeking recovery of their claims and liens through the receiver; that the receiver never signed said agreement and it was never approved by the court

having control of the receiver; that the judicial sale of October 15th, 1932, was made without securing an order from the court giving its permission and that the identical mining property sought to be sold was then in the actual possession of the defendant receiver and under the direction and control of the district court; that therefore the judicial sale was fraudulently held, was a nullity and void and that plaintiff Tibbals acquired no title. The plaintiff Spriggs claims his title and interest by virtue of a purchase from Tibbals after the sale.

To the answer and cross-petition the plaintiffs filed a general denial and a very lengthy reply, setting out in detail the various court proceedings and orders upon which their title is based. A trial was had to the court and a judgment was rendered March 27th, 1934, in favor of Tibbals and Spriggs for possession and damages in the sum of $500. An order granting a new trial was made October 12th, 1934, setting aside this judgment and on September 16th, 1935, a judgment was entered in favor of defendant Graham as receiver against plaintiffs Tibbals and Spriggs. The case is here on direct appeal. The record discloses these facts: The claim of plaintiff Tibbals in the sum of $17,500 and accruals is a first lien upon this property by reason of an express trust having been impressed thereon in favor of Tibbals v. Keys, 40 Wyo. 524, 281 Pac. 190, and the defendant does not dispute "its validity, priority, or pre-existing character." As respects the court records hereafter referred to, we mean the records of the district court of Fremont County. It appears that in Case No. 4561, in which J. J. Marrin was plaintiff and Midwest Mines Corporation was defendant, Marshall Graham was duly appointed receiver November 3rd, 1930, and has at all times since been such receiver and in possession of the property herein involved, consisting of mining claims,

machinery, fixtures, etc. The judicial sale of October 15th, 1932, the basis for plaintiffs' claim of title, was made in Case No. 4623, which was a suit brought by the Federal Gold Mining Company against Barney Tibbals, who is one of the plaintiffs in the instant case. The whole court file, consisting of some 247 pages, is in the record. An order was made in this suit making Graham, as receiver, as well as others, parties defendant. Later in the court proceeding in Case No. 4623 the court ordered a dismissal as to Graham as receiver and the others previously made parties defendant. Thereafter judgment was entered for defendant Tibbals dismissing plaintiffs' petition and declaring the judgment of $17,500, with interest, etc. (which had previously been declared by the Supreme Court in Tibbals v. Keys, supra, to be a valid, prior and subsisting lien against the property), again to be such a valid lien; made provision that the property impressed with the trust be sold to satisfy the lien and judgment, and further made provision that out of the proceeds of the sale (1st) that costs of sale be paid, then the $17,500 judgment and interest be paid, "and the remainder, if any there shall be, shall be paid to the Clerk of this court for the plaintiff * * * as the court may afterwards determine in case of the presentation of any adverse claims." We pause here to state that plaintiffs keep reiterating that by this judgment defendant's rights to the property were determined and therefore the matter is res judicata. The record quoted above shows that an order was made dismissing defendant. Not being a party, his rights were in no way adjudicated. "Only adversary parties are estopped or concluded by a judgment under the doctrine of res judicata." Lawer v. Mitts, 33 Wyo. 249, at 255; 238 Pac. 654.

The agreement and option of August 23rd, 1932, which defendants claim prevented bidding, is in the

record. It is signed by plaintiff Tibbals, as optionor, Clement K. Quinn, as optionee, The Federal Gold Mining Company, Estate of John C. Spry, and "Marshall Graham as Receiver of the Midwest Mines Corp. by George F. Dobler, his attorney,"—and at this point let us say that a careful search of the 1275 pages of the record clearly shows that Dobler had no authority from the receiver to sign. The receiver was in the state of Montana when the agreement was entered into and did not sign the same. The court did not approve the agreement in the case where the receivership matter was pending. It is true that an order was made by the court in Case No. 4623, upon the joint application of Federal Gold Mining Company and Barney Tibbals, approving the agreement, but the receiver was not a party to that suit because of the dismissal heretofore referred to. It is argued that a district court takes judicial notice of all the files in the court over which he presides and that therefore this order in Case No. 4623 approved the agreement for the receiver. This is not the law in this jurisdiction. "A court ordinarily does not judicially recognize the contents of any of its records except in the proceedings before it." Sidlo, Simons Co. v. Phillips, 48 Wyo. 390, at 396; 49 P. (2d) 243. The agreement and option recites, among other things, that the Federal Gold Mining Company waives its right of appeal in Case No. 4623; Tibbals releases Federal Gold Mining Company and Spry Estate and its bondsmen from all claims and rights of action incident to the litigation; Clement K. Quinn secures option to purchase property; The Midwest Mines Corporation claims an interest by reason of lease and option from Federal Gold Mining Company, and Marshall Graham, Receiver, having advertised for sale its interest. The agreement and option then provides:

"* * * Barney N. Tibbals proceeds with the sale of

said properties under his judgment and order of sale issued in case 4623 to satisfy his said judgment; and at such sale will bid for said properties the amount necessary to satisfy his judgment in full, including principal, and interest and costs, accrued and accruing, expenses of sale, and such amount will satisfy the judgment in full.

"The other parties will not bid at such sale, except in case of adverse bidders, and then only thru Barney N. Tibbals; and for the protection of all parties hereto, and for their mutual advantage and benefits, in case of adverse bidders against Tibbals, *then as a means of* defeating such adverse bidders who might acquire the properties without just and fair bids over Tibbals' *judgment,* it is agreed that, with the consent and approval of the parties hereto, and of the court, but without any obligation whatsoever on the part of said Tibbals or the officer making the sale, to account for the surplus over and above the amount necessary to satisfy the judgment of Tibbals, he, Tibbals, will bid such sum as he may be requested to bid by the other parties hereto in order to defeat such adverse bids and purchase the property; and the excess amount so bid over and above the amount necessary to satisfy the judgment in full shall be receipted for as received by the parties entitled to such excess or surplus over the judgment of Tibbals, and such receipt shall be given the officer making the sale, and filed in court by the parties entitled to the money.

"Barney N. Tibbals hereby gives to Clement K. Quinn, the exclusive right and option to purchase his judgment and all the right title interest and estate that he may acquire thru said sale of the properties for the sum necessary to satisfy his judgment in full, including principal, interest to date of taking up the option, costs, accrued and accruing, expenses of sale, and such amount as satisfy his judgment in full, to date, plus, the further and additional sum of $5000, which shall be due in any event as a part of the claim of Tibbals, whether the sale take place or the property be redeemed before sale, and shall be added to the sum necessary to satisfy the judgment in full, and consider a part thereof. As soon as possible after the sale, a statement of the total amount due under the

sale, and this option, including all costs shall be filed with escrow holder of the deed, and a copy thereof mailed to Clement K. Quinn care of, Alworth Building, Duluth, Minn. by Registered mail, all of which shall be done by said Tibbals, and he shall attest the amounts therein as true and correct, by certification in person or by his attorney.

"The option shall be exercised and taken up on or before the hour of 12 Noon, of the 2nd day of January, A. D., 1933 * * *."

There are twelve specifications of error assigned. Counsel for plaintiff states: "The case may well be determined on assignments One and Two, that the evidence does not support the judgment; and the judgment is contrary to the evidence, and contrary to law." We agree with counsel that the case may be disposed of on these contentions.

Counsel for plaintiffs argue that the judicial sale and its approval by order of confirmation is final and conclusive, and res judicata, in case No. 4623, and that the case at bar is a collateral attack upon it, and therefore the judgment of the lower court should be set aside. The defendant has made an attack upon the judicial sale and the order of confirmation in the case No. 4623 referred to herein. There are but two grounds on which a judicial sale can be held invalid; (1) lack of jurisdiction in the court ordering it; (2) or, fraud practiced in effecting it. 35 C. J. 111. Upon the ground of lack of jurisdiction, holding a judicial sale invalid, may be included those judicial sales where the property is in the hands of a clerk of court, sheriff, receiver and the like. Here the property is in the custody of the law, and "the doctrine of 'in custodia legis' is a rule of property right, made for the benefit of litigants, as well as a rule of jurisdiction, made for the purpose of avoiding conflicts between courts, and it applies until the matters involved have been fully disposed of, and whether the execution issued out of the same or

another court." 23 C. J. 357. Certainly the facts in this case show a lack of jurisdiction—the receiver not being a party because of the dismissal as to him entered by the court in No. 4623 May 27, 1932. True, the district judge signed an order approving the contract between the Federal Gold Mining Company, Barney N. Tibbals and one Clement K. Quinn in case No. 4623, but the receiver was not a party and the order does not show that he was before the court or in any way joined in the application asking the court's approval of the contract. It is also true that later in January, 1933, the district court entered its order confirming the sale of the mining property in case No. 4623. But again the receiver was not a party to the proceedings and therefore the only parties estopped or concluded by the court's judgment or confirmation were the adversary parties, Federal Gold Mining Company and Barney Tibbals. Lawer v. Mitts, 33 Wyo. 255, 238 Pac. 654. It seems to be fundamental and elementary that a judicial sale may be set aside at any time where a court lacks jurisdiction in making it. "Of course the sale may be set aside at any time, or subjected to collateral attack, where the court has no jurisdiction to order it, or for any other reason it is entirely void." 16 R. C. L. 102. See also Kirk v. Mullen, 100 Ore. 563, 197 Pac. 300; Townsend v. Tallant, (Cal.) 91 Am. Dec. 617; Gallaher v. Collins, (Pa.) 7 Watts. 552; Gonzales v. Angloda, 33 Porto Rico 980; Bank of Pine Bluff v. Levi, 90 Ark. 167; Miller v. Winslow, 70 Wash. 401.

The record shows that the property was in the hands of the receiver and therefore in custody of the law. Even though plaintiffs had the prior valid lien, they were bound to recognize the fact of which they were well aware that the property was in custodia legis.

As respects the interference with a receiver's rights in property in his possession, the courts are zealous in

protecting such rights. After all,. the receiver is the court's officer. The rule is stated in 53 Corpus Juris 111 thus:

"The court appointing a receiver has power, and it is its duty, to protect from interference the property in its possession through its receiver. It never tolerates such interference without its leave, whether it is done by the consent or submission of the receiver or by compulsory process against him, even for the purpose of carrying out private contracts or trusts; and the fact that the receiver's appointment was erroneous is immaterial. The court has power by summary process to compel a person to make restoration of property wrongfully taken from the receiver's possession, or, in default thereof, make good the pecuniary value."

And again, in High on Receivers, (4th Ed.) page 167:

"So extremely jealous are courts of equity of any interference, *pendente lite,* with the possession of their receivers, that they will not ordinarily permit property which is the subject of the receivership to be sold on execution. And while the appointment of a receiver does not destroy existing liens upon the property, it prevents their enforcement by the ordinary legal process and compels the persons asserting such liens to seek their remedy in the cause in which the receiver is appointed."

A leading case on the subject is Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322, a suit in ejectment brought by parties claiming through the purchaser of the property at an *execution sale,* against holders under the purchaser of the same property at a *receiver's sale,* the court having jurisdiction of the receivership not being requested to give its consent before the sale. The court held:

"As we have already said, it is sufficient, for the disposition of this case, to hold, that while the estate is in the custody of the court, as a fund to abide the result of a suit pending, no sale of the property can

take place either on execution or otherwise, without the leave of the court for that purpose. And upon this ground, we hold that the sale by the marshal on the two judgments was illegal and void, and passed no title to the purchaser."

To the same effect are: Wabash R. Co. v. Adelbert College, 208 U. S. 53, 52 L. Ed. 379; Hitz v. Jenks, 185 U. S. 155, 46 L. Ed. 851; Gibbons v. Ellis, 63 Cal. 76, 165 Pac. 783; 23 R. C. L., Secs. 70-71-74; 1 Clark on Receivers, Sec. 466.

Reverting to the option and agreement of August 23rd, 1923, together with the circumstances surrounding the sale, we are of the opinion that it tended to chill and stifle free, fair and competitive bidding at the judicial sale held October 15th, 1932. In the portion of the agreement above set out we find this language: "then as a means of defeating such adverse bidders who might acquire the properties without just and fair bids over Tibbals' judgment it is agreed * * *" etc. At the judicial sale the property brought $21,434.16. There is evidence in the record of varying value up to $303,000.00. And it further clearly appears that at least one man, Mr. H. P. Coolidge, was ready, able and willing to bid $30,000 or more for the property, but that upon his learning of this option and agreement and by reason of it, he refused to appear and bid at the sale. Such an agreement and circumstances as respects bidding at a judicial sale are not looked upon with favor, and amount to a fraud. In this instance everyone who signed the agreement stood to profit by it, save the receiver and those claiming through him, and he was an officer of the court, and as we have said before, was not a party to it. Tibbals was to receive $5000 more than the judgment he held as a lien against the property.

So where a tenant bought his landlord's property at

a judicial sale, by practices well calculated to deceive, the Supreme Court of the United States held:

"The law will not tolerate influences likely to prevent competition at a judicial sale, and it accords to every debtor the chance for a fair sale and full price; and if he fails to get these, in consequence of the wrongful interference of another party, who has purchased his property, at a price greatly disproportionate to its value, equity will step in and afford redress, either by setting aside the proceedings under the sale, or by holding the purchaser to account." Cocks v. Izard, 7 Wall. 563, 19 L. Ed. 275.

In Hamilton v. Hamilton, 46 Am. Dec. 58, where an agreement tended to prevent and stifle competition, the court said:

"The principle which governs all sales at auction is that there should be full and fair competition. Any agreement, the object and effect of which is to chill the sale and stifle competition is illegal, and the party to the agreement can derive no benefit from the sale."

Mr. Justice Story is quoted id. 61:

"Agreements whereby parties engage not to bid against each other at a public auction, especially in cases where such auctions are directed or required by law, as in cases of sales of property under execution, are held void; for they are unconscientious, and against public policy, and have a tendency injuriously to affect the character and value of sales at public auction, and mislead private confidence."

There are many authorities to the same effect; reference is hereby made to some of them: 35 C. J. 39-40-41; 16 R. C. L., Secs. 49-50; Lloyd v. Malone, (Ill.) 74 Am. Dec. 179.

After a careful review of the questions presented upon the merits, we are of the opinion that the judgment of the lower court should be affirmed.

2. While we have disposed of this case on its merits, we should add that, notwithstanding the repeated warnings given by this court, counsel for appellant has

again flagrantly violated the rule in connection with his abstract of the record. Counsel well knows that the rule in reference to these abstracts, adopted by this court only after consultation with, and after approval of, the great majority of the members of the bar, was adopted solely for the purpose of promoting the administration of justice, as he himself fully recognized in the case of Sterling Lumber Company v. Thompson, 47 Wyo. 519, 41 P. (2d) 264, in which case counsel himself insisted upon the strict application of the rule. This court, as counsel realizes, has much to do. It is only with difficulty that its docket is kept reasonably cleared, and its work is not that of ease. The requirement of an abstract of the record is not for the purpose of enabling the members of this court to pass their lives in leisure, but for the purpose of dispensing reasonably speedy justice, and this, as all are agreed, is important to litigants. The rule enables counsel to become familiar with the record and has a tendency to prevent the making of unwarranted claims. It enables the parties to eliminate all immaterial matters from the record. The copies enable each member of the court to find out the facts at the same time so as to intelligently consult thereon and give an intelligent judgment. Furthermore, inasmuch as the original papers are sent back to the district courts, this court should have a record of the facts on which its decisions are based. Even with the requirement of an abstract, the expense of appeals in this state is comparatively small. Since no printing of any kind is required, and since this court merely asks for the things absolutely essential in case of appeal, such expense is probably lower in this state than it is in any other. The abstract need not be printed. Its expense is small. It requires labor on the part of counsel, but he should be willing to undergo this labor, if he desires to intelli-

gently represent his client and present his case in the best manner possible.

The writer of this opinion, after sitting as a member of this court, took with him, to his home, the various papers in the case, except the original record. He expected that, by looking over the abstract of the record, he would be able to get some intelligent idea as to the contention and merits in the case. He was wholly unable to do so. Moreover, the original record, consisting of 1275 pages, was in such a jumbled mess that he had great difficulty in arriving at the true situation in the case. The abstract of the record, in giving the evidence, consists very largely of arguments and counsel's conclusions. It states, for instance, on page 56: "By this sale, the evidence shows that Graham,˙ receiver, was, on September 12, 1932, by the sale and confirmation of sale, divested of any and all rights of the Midwest Mines corporation to the lease." This, of course, is pure argument, and a conclusion of what the evidence shows. Again, on the same page, the abstract states: "The evidence of plaintiff from case 4561 also established the right of plaintiffs to the properties, both as to title and immediate possession and damages for unlawful detention." This, too, is pure argument and a conclusion of what the evidence shows. An abstract of the record is not designed for the purpose of argument. Nor is its function to state the conclusion of counsel of what the evidence shows. It should state the evidence, generally in the narrative form, in the language, as near as may be, of the witness himself. The court cannot accept the interpretation which counsel puts upon the evidence. It must itself judge of the effect of it, after examining the language used by the witness. Again, it is stated in the abstract, after making brief reference to some evidence which was objected to by counsel, that "none of the evidence objected to was material. It did not support any issue."

This was a statement proper to be made in a brief, but it has no place in an abstract of record. Again, while referring to the evidence, reference is made to pleadings, following by a lengthy argument in connection therewith. Rule 37 states that pleadings and the evidence must be separately given.

These are but a few of the matters which we might mention in this connection. The writer hereof suggests that counsel should examine rule 37 and consider the nature of an abstract of record. The court has been patient. It pointed out to counsel the character of an abstract of record in the case of In Re St. Claire's Estate, 46 Wyo. 446, 28 P. (2d) 894, and again in In Re Lane's Estate, (Wyo.) 60 P. (2d) 360, and it should not be necessary to do so again.

*Affirmed.*

BLUME and RINER, JJ., concur.

ON PETITION FOR REHEARING

PER CURIAM.

A petition for rehearing has been filed herein. We shall not again go over the grounds fully covered in the opinion on the original hearing, but shall mention what seem to be the main new points of contention now made, and not specifically heretofore mentioned, and hope, if we can, to convince counsel that the trial court, after having evidently given the matter its most scrutinizing consideration, was not in error.

1. On September 1, 1932, the receiver sold the mining property in controversy, of which he had possession, and this sale was confirmed by the court. It is contended that we overlooked this, and should have considered it. Counsel's theory apparently is that thereby the receiver's power over the property ceased, and that the latter was not, thereafter, in *custodia legis*. We did not, it is true, mention this matter in

the original opinion, deeming it immaterial. The sale was held merely to cut off the interests of the Midwest Mines Corporation. The property was bid in by the receiver himself. He, as purchaser, is called a trustee. But the name is immaterial. He bid in the property in his official capacity, and, to quote from the order of confirmation, "for the benefit of all parties holding claims, liens and charges and expenses of administration of whatsoever nature, in the receivership proceedings." In other words, he continued to hold the property as receiver, and merely cut off the rights of one party interested in the receivership proceeding. The latter continued thereafter. In fact, the plaintiffs in the instant action, by bringing it against the receiver, recognized the fact that it was in the possession of the receiver. We are unable to see how that sale can affect the questions involved herein.

Counsel again and again stresses the fact that the lien or right of the plaintiffs is paramount to any of the rights of the receiver. Among other things, he complains that we overlooked Section 89-825, Rev. St. 1931, providing that during the pendency of an action no "interest can be acquired by third persons in the subject matter thereof, as against plaintiff's title." But the materiality of that provision is not perceived. That Tibbals acquired a lien or right prior to that of the receiver is not herein contested by the receiver, and the trial court in the instant suit fully protected it. Counsel draws the conclusion that the paramount right cannot in any manner be affected by the receivership proceeding. Here, perhaps, lies one of the fundamental errors into which counsel has fallen. The receiver's right arose out of a lease made to the Midwest Mines Corporation by the Federal Gold Mining Company in 1928, subsequent to the time when Tibbals' right accrued. The Midwest Mines Corporation became insolvent in 1930 and a receiver was appointed

for it in November of that year, so that the creditors of the lessee might be protected. The receiver was appointed long before the plaintiffs herein sought to enforce the right which Tibbals had. The mere fact that Tibbals had a prior right could not, before that right was fully enforced and ownership of the property was acquired by the plaintiffs, prevent the accrual of rights subsequent and inferior to the rights of plaintiff, nor is any just reason apparent why such inferior right could not or should not, as far as possible, be protected along with that of Tibbals. Counsel seemingly is unwilling to recognize the rule of law stated quite at length in our original opinion that a creditor cannot interfere with the rights of property placed by the court into the hands of a receiver and taken possession of by the latter, although he has made no attempt to point out why the authorities cited by us should not be followed in the case at bar, nor has he attempted, at least directly, to point out why these authorities do not state good law. Merely because plaintiff's lien may be superior to the rights of the receiver cannot brush aside the force and effect of these authorities. In the leading case cited by us, namely, Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322, wherein the judicial sale was held void, the lien of the execution creditor accrued prior to the time of the appointment of a receiver, but the sale was held subsequent to the time of the appointment, so that the case is seemingly squarely in point herein. The case is followed and cited with approval in Dugger v. Collins, 69 Ala. 324; Pelletier v. Lumber Co., 123 N. C. 596, 31 S. E. 855, 68 A. S. R. 837; Ellis v. Water Co., 86 Tex. 109, 23 S. W. 858; Walling v. Miller, 108 N. Y. 173 and other cases. It is stated in 53 C. J. 111-112 that the rule against interference with the receiver's possession applies even though a claimant's lien is paramount to the right of the receiver. In 53 C. J. 131,

132, the general rule is stated that when property has passed into the hands of a receiver, it is not subject to execution. Cases are cited from about twenty different jurisdictions. It is true that there are a few discordant notes among the authorities. 53 C. J. 134. The early New York cases on this point seem to have been overruled by Walling v. Miller, supra; at least the court deciding Ellis v. Water Co., supra, thought so. All the authorities, without exception, seem to be agreed that no holder of a lien, paramount or otherwise, can, without the court's authority, disturb the receiver's possession. If we should hold herein that the plaintiffs had the right to sell the property without such authority, and then bring an action in ejectment, without such authority, and thus oust the receiver from possession, we should merely permit the rule thus unanimously held to be circumvented by an indirect method. The proper remedy, as stated by High on Receivers, (2nd Ed.) Sec. 141, "for a judgment creditor, who desires to question the receiver's right to the property, is to apply to the court appointing him to have the property released from the receiver's custody, in order that he may proceed against it under judgment." See also 53 C. J. 134.

Counsel contends that the receiver was bound by the judgment in Case No. 4623—Federal Gold Mining Company v. Tibbals—because he was once in the case, and the order dismissing him from the case was void. The court made the order of dismissal in that case as against all parties except Tibbals on May 17, 1932. All the parties were before it. No exception to the order was taken, and we think that plaintiffs herein are bound by it. We are unable to see upon what principle we could declare the order void. We have not been cited to any case holding it so. Counsel, however, further contends that the judgment in that case, presumably particularly that part which directed the sale of

the property, was binding upon the receiver even though he was not a party to the suit when the judgment was rendered, upon the theory that he is a privy of the lessor, that his rights are based merely on a lease given to the Midwest Mines Corporation, and that being merely a lessee, he is bound by any judgment against the lessor. That would, perhaps, be true, if the leasehold interest had been acquired during the pendency of the action. But it was acquired long prior thereto. The receiver had an interest separate from that of the Federal Gold Mining Company, though derived through the latter. He was entitled to defend his right as receiver, and could not be bound in an action in which he was not a party. The lease was in force and effect, and was, as late as June 2, 1933, declared by the court to be in force and effect and that it had not been forfeited.

4. Counsel for plaintiffs argues that the statement in the original opinion that the receiver was in possession of the property is erroneous. In fact he states that "it was legally impossible for the property to be in the hands of the receiver." We do not know what counsel means. The trial court found that the receiver was in possession from the time when he was appointed, and the record seems to bear out that finding. Plaintiffs conceded that he had possession when they brought this action in ejectment. Counsel state again and again that the receiver merely held under a lease. True. But surely a lessee, and a party acquiring the lessee's right, can have physical possession of property just as effectually as a lessor, and a receiver can be appointed to take charge of the rights of a lessee, or assigns, just as effectually as one who is to take charge of the rights of the lessor. Counsel seems to argue, if we understand him correctly, that since the receivership could merely effect the rights which the lessee had, it would not affect the rights of plaintiff which

were acquired directly from or in connection with the lessor. But we cannot see the force of that. The property involved—aside, perhaps, from personal property belonging to the lessee and assigns—is the same in either case; the lease covers the physical property—the mine—the same as the lien of Tibbals; both rights touch the identical property; the only difference is that the lien of Tibbals—both plaintiffs—may be superior to the rights of the receiver. The rights of the latter could not, it is true, be greater than that acquired under the lease, but the right would, nevertheless, be in the property itself, in so far as the lease gave it.

5. Counsel further argues that the property in controversy was in *custodia legis* by reason of the fact that Tibbals was given a prior lien thereon. Counsel have cited us to no authority, and we think that he is in error.

We have given the petition for rehearing and the accompanying brief the most painstaking consideration, but we see no reason why the judgment of the trial court herein should be reversed. The petition for rehearing is accordingly denied.

*Rehearing Denied.*