# April Term, 1917.

## No. 8575.

### GIBBONS ET AL. *v.* ELLIS.

1. APPEAL AND ERROR—*Presumptions.* Where the bill of exceptions fails to aver that all of the evidence heard by the court below is presented therein, the court of review is bound to assume that there was sufficient evidence to justify the conclusions reached, and to warrant affirmance of the judgment.

2. EXECUTION—*Property in Custodia Legis,* is not liable to execution. The rule is not only a rule of jurisdiction, but a rule of property, for the benefit of litigants.

A levy under process issued in a cause other than that in which possession is assumed, even though from the same court, is as unlawful as if under process from another court.

In an action between Gibbons and O'Connor it had been determined that certain shares of corporate stock were held by O'Connor as pledgee, and he had been required to deposit the certificates in the registry of the court, to be delivered to Gibbons or his assignee, upon payment of a specified sum within a certain time, for the redemption thereof; and the corporation was required to re-issue the stock to Gibbons or his assignee, upon compliance with the prescribed terms of redemption. O'Connor having deposited the stock certificates in the court, they were afterwards assigned in writing by Gibbons to Bordeleau, who had deposited in court the prescribed redemption money. Subsequent to this assignment, Ellis having a judgment against Gibbons, in the same court, levied execution upon the shares. An order quashing the levy was affirmed. The judgment of the Court of Appeals *contra* (*Ellis v. Gibbons*, 26 Col. Ap. 454) reversed.

*Error to the Court of Appeals.*

Mr. T. J. O'DONNELL, Mr. J. W. GRAHAM and Mr. CANTON O'DONNELL, for plaintiffs in error.

Mr. J. HOWARD DANA, Mr. G. DEXTER BLOUNT and Mr. HARRY S. SILVERSTEIN, for defendant in error.

Mr. Justice Bailey delivered the opinion of the Court.

THIS is a review on error of a judgment of the Court of Appeals, sustaining a levy under execution in favor of Eva Prince upon 3,333 shares of stock of The Joseph Gibbons

Consolidated Mining Company, as the property of Joseph Gibbons. These are in substance the facts:    The judgment upon which execution issued was a deficiency foreclosure judgment in favor of Eva Prince, now Eva Prince Ellis, against Elizabeth Gibbons and Joseph Gibbons.    Execution was begun by garnishment of The Joseph Gibbons Consolidated Mining Company; its return showed that 3,333 shares of the company stock, then standing on its books in the name of John F. O'Connor had been in litigation in the District Court, and by judgment and decree there, it had been determined that O'Connor was pledgee thereof, and that the company was required to re-issue the shares to Gibbons or his order, upon compliance with the terms of redemption stipulated in the decree.    The sheriff thereupon levied upon the shares in favor of Mrs. Ellis, and advertised them for sale.    The Gibbonses, joined by Joseph Bordeleau, filed a motion to quash the levy on the ground, among others, that the shares of stock were not subject to be sold under levy and execution; under this subdivision counsel argued that the stock in question was in *custodia legis* and, therefore, exempt from levy and sale.    Upon the hearing it appeared that the interest of Gibbons in the shares had been transferred in writing to Bordeleau.    That instrument set out that the stock certificates were in the registry of the court at the time of the transfer, that they were to be delivered to Bordeleau, upon redemption in conformity with the terms of the decree in *Gibbons v. O'Connor*, under which they were held, and for which redemption Bordeleau had deposited in the registry of the court the necessary amount, some $5,800.00.

The motion to quash was allowed, and that decision was reversed by the Court of Appeals in *Ellis v. Bordeleau*, 26 Colo. App. 454, 145 Pac. 285.    Elizabeth M. Gibbons and Joseph Bordeleau appear here as plaintiff's in error from the Court of Appeals judgment, and Mrs. Ellis as defendant in error, and they will be so referred to herein.

In the opinion of the Court of Appeals it was stated that the record failed to show that the decree providing for the disposition of the shares was before the trial court when

the motion to quash the levy was determined. Defendant in error, however, does not deny this. That decree was rendered, and the motion to quash allowed, in the same court and by the same judge. There can be no doubt that at the hearing of the motion the trial court had actual knowledge of all the provisions of the decree, and of the facts and circumstances connected with the entire transaction. It is not necessary to assume that the judge had to depend upon memory for these facts, as it is not possible to conceive that the court heard the motion without having before it, and taking judicial notice of, its records in a previous case involving the same property. The court would necessarily take notice of the fact that the stock levied upon was the same that had been involved in the former action, that the certificates had been deposited with the clerk of the court, and that Bordeleau had deposited the money to redeem them as assignee of Gibbons, in precise conformity with the terms of the original decree. These facts are not disputed; indeed, there is no controversy over them. As to whether they may be taken judicial notice of, being part of the court's records, Wigmore on Evidence, in Vol. 4, sec. 2579, says:

"However, for reasons of convenience, where controversy is unlikely, and the expense of a copy would be disproportionate, courts are often found taking notice of the tenor or effect of some judicial proceeding, without requiring formal evidence. Since this dispensation is not obligatory on the part of the court, and since it must depend more or less on the practical notoriety and certainty of the fact under the circumstances of each case, little uniformity can be seen in the instances."

The proceedings of the trial court in the litigation respecting these shares was in the nature of a foreclosure, in which it determined the rights of O'Connor as pledgee and of Gibbons as the original owner of the shares, in these terms:

"* * * That in case the said defendant, John F. O'Connor, shall abide by and perform this decree, and shall within thirty days from this date bring the said three thou-

sand three hundred and thirty-three (3,333) shares of stock into the registry of this court duly assigned to the said Joseph Gibbons, to be delivered to the said Joseph Gibbons, upon the payment into the registry of this court for the use of him, the said O'Connor, of the amount found due to the said O'Connor as hereinaforesaid, and if the said Joseph Gibbons shall not perform the said decree and shall not pay the said sum as hereinaforesaid within the time herein fixed, then and in that event, the right of redemption shall cease and determine and be at an end, and this cause shall stand dismissed out of this court."

By the decree the mining company was required to re-issue the stock to Gibbons or his assignee upon compliance with the redemption provisions. While the decree was in process of enforcement, through redemption of the stock by Gibbons, or pending his failure to do so within the time limit, the attempted levy on the shares was made by garnishment of the mining company.

There is no statement in the certificate to the bill of exceptions that all the evidence is contained therein, and this court is bound to assume, in the absence of such certificate, that there was sufficient evidence to justify the court in the conclusion reached. This alone would be sufficient to warrant the affirmance of the judgment of the trial court. Every reasonable and necessary intendment will be resolved in favor of the propriety of such judgment. *Martin v. Force,* 3 Colo. 199; *Webber v. Emerson,* 3 Colo. 248; *Behymer, et al v. Nordloh,* 12 Colo. 352, 21 Pac. 37; *Colby v. Thompson,* 16 Colo. App. 271, 64 Pac. 1053.

If, however, under the decree the stock was in *custodia legis* at the time of the levy it was not subject to execution, and we will consider the matter from this standpoint.

In *National Bank v. Londonderry Company,* 50 Colo. 85, 114 Pac. 313, certain funds which had been placed in the registry of the court were ordered deposited in a bank pending the issue of a controversy over them. In discussing the status of this fund so deposited the court, said:

"The funds borowed were in the custody of the court, and the bank which came into court and borrowed this money

with knowledge of the conditions under which it was acquired, made itself a *quasi* party to the action, and was subject to the orders and decrees of the court; and is estopped to deny that it had not become such a *quasi* party to the suit. In such case, it was not necessary that a separate suit should be brought; in fact, under repeated decisions of the federal courts, and in some states where the question has been passed upon, it is held that no separate or outside suit could have been brought to disturb these funds. *Corbill v. Farmers' Nat. Bank et al.,* (C. C.) 114 Fed. 602; *Jones v. Merchants' Nat. Bank,* 76 Fed. 683, 22 C. C. A. 483, 35 L. R. A. 698; *Allen v. Gerard,* 21 R. I. 467, 44 Atl. 592, 49 L. R. A. 351, 79 Am. St. 816; *Tuck v. Manning,* 150 Mass. 211, 22 N. E. 1001, 5 L. R. A. 666; *Curtis v. Ford et al.,* 78 Texas 262, 14 S. W. 614, 10 L. R. A 529."

In *Jones v. Merchants' Nat. Bank, supra,* attempt was made to attack a similar deposit of money from the registry, and although these deposits were made under special statutes, the court declared the fund immune from seizure on common law principles:

"Independently of all statutory provisions, the plain and well known principles of the general law, especially as administered in equity, furnish sufficient sanction and protection to each, and each is in all respects declared by the law to be exempt from the process of the litigant, without the consent of the court first obtained, as though it had always remained in the personal custody of the court's immediate officials."

In *Corbitt v. Farmers' Bank, et al., supra,* a similar attempt to attach funds deposited by court order was disposed of in the following language:

"The question presented by the motion to abate the attachment in this cause is whether moneys paid into court pending litigation in regard thereto and placed by order of the court in its registry or some other designated depository, pursuant to law, are the subject of attachment emanating from another court. This question is one of importance, as it not only affects the orderly administration of justice in the several courts, but goes further, and

tends, as in this case, to thwart and annul the carrying out of the court's judgment, in a case fully litigated, with the parties in interest all before it. Money paid into the registry of the court, pursuant to law, can only be withdrawn therefrom by the very terms of the Act of Congress provising for the deposit, 'by the order of the judge, or the judges of said court, respectively, to be signed by such judge, or judges and to be entered and certified of record by the clerk.' When a court causes funds to be so placed in its registry, they are to the credit of the court itself, there placed and held, to the end that its decrees and orders in respect thereto may be obeyed and carried out in accordance with its judgments rendered; and no court, other than one having a supervisory power over the acts of such court, can by any act of its own, or any decree, order or process emanating from it, except with its leave, assert any claim to, or secure any right or lien upon, such funds, so long as the same remains under its control. To entertain a contrary doctrine to this would not only work untold mischief and delay in legal proceedings, but would result in innumerable conflicts between the courts themselves; and the consequence would be that funds once paid into court, with a view of having the rights of parties litigant thereto adjusted and determined, instead of being disposed of by the termination of the particular controversy, would be involved in an endless chain of litigation. This subject has been before the courts, both state and federal, too frequently to now admit of serious cavil or doubt."

The question of the jurisdiction of the *res*, with reference to other judicial processes instituted regarding it is passed upon in *Farmers' Loan, &c., Co. v. Lake St. Rd. Co.*, 177 U. S. 51, 44 L. Ed. 667, 20 Sup. Ct. 564. The court at page 61 says:

"The possession of the *res* vests the court which has first acquired jurisdiction with the power to hear and determine all controversy relating thereto and for the time disables other courts of coordinate jurisdiction from exercising like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts

whose jurisdiction embraces the same subject and persons. Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts or liquidate insolvent estates, and in suits of a similar nature, when in the progress of the litigation the court may be compelled to assume the protection and control of the property to be affected."

It appears to be conceded by the Court of Appeals that if the stock in question could be regarded as having been in *custodia legis* at the time of the attempted levy the judgment of the court below should be affirmed. It is quite evident from its opinion that that court, for some reason not clearly apparent, failed to apply the doctrine here invoked, that property actually or constructively in the custody of the court, cannot, until the matters therein involved have been finally disposed of, be interfered with by process in any other suit, whether issued out of the court which acquired such possession, or of some other court.

*First National Bank of Oswego v. Dunn,* 97 N. Y. 149, 49 Am. Rep. 517, contains a very thorough discussion of the subject of the law as applied to the facts, which are, that the bank had replevined certain property from Dunn, and no forthcoming bond having been given, the plaintiff in replevin was entitled to have the property delivered to it. While the sheriff was preparing to make such delivery, but before it had been actually accomplished, The Second National Bank of Oswego delivered to him an execution against Dunn and required him to levy upon the same property. We quote from pages 517-518 of the case in 49 Am. Rep.:

"He made the levy, and so found himself at one and the same instant required to deliver up the malt on one mandate and retain and sell it on the other. He cannot do both. The two duties, each equally imperative, are utterly inconsistent, and the performance of either inevitably involves non-performance of the other."

By the terms of the decree in *Gibbons v. O'Connor*, it was required of O'Connor that he deliver the shares, or deposit them in court, in order to get the redemption money. And Gibbons, as we have already noted, was required to pay some $5,800.00 into the registry of the court within ninety days from the date of the decree, as a condition precedent to his right to have the benefit of the decree. How could the terms of that decree be made effectual if meantime an outsider, in another and different suit, should be allowed to levy upon, seize and sell the shares or property in question? To permit interference of this kind with the enforcement of a judicial decree would be to cast parties, who had already litigated their differences in a court of justice, and whose rights had been solemnly adjudicated, upon a new sea of strife and uncertainty. Under such conditions to uphold the levy in question would not only hinder the enforcement of the decree, but would practically nullify it. Public policy, a due regard for the orderly administration of justice as embodied in the decrees of the courts, and the rights of parties litigant, successful and defeated, require that such practice be not approved.

The record in the *Gibbons-O'Connor* case shows that upon the filing of the complaint an injunction was issued restraining O'Connor from voting the stock, and from "selling, disposing of, or incumbering in any manner any of the said shares of stock until the further order of this court." No amount of argument will make it plainer than the mere statement of the fact that "it clearly appeared from the complaint, as soon as it was filed," that it would become necessary to a complete determination of the issues tendered and to the enforcement of the decree sought, for the court to exercise its dominion over the specified stock described in the complaint. That it would be necessary to the enforcement of the court's judgment to seize, or to otherwise exercise dominion over, the stock. The commencement of the suit was the beginning of the jurisdiction and control over the property, and the deposit of the certificates was the culmination. From the beginning the stock was in the constructive possession of the law, and when the certificates

were deposited in court they were actually and physically in *custodia legis*.

The Court of Appeals seems to think that the fact that the levy was attempted, under process issued from the same court as that which had drawn unto itself the custody of the property sought to be levied on in the suit of *Gibbons v. Gibbons Consolidated Mining Company*, is a reason why the cases cited do not apply. These cases were cited merely to show the principle of law applicable to property situated as were the shares in question, after the institution of the suit of *Gibbons v. The Gibbons Consolidated Mining Company*, up to the time that the injunctive and other orders referred to were disposed of by an enforcement of the decree therein. The principles, so clearly declared, apply to the property involved, and it is because of their application to the property, that the courts hold as they do. When property is in a situation which makes the principle applicable, it is just as much exempt from seizure by an officer of the court having it in custody (actual or constructive) upon process issued in another suit, in favor of one not a party to the action in which the custody was taken, as it is from levy under process issued by another court of the same or of an independent jurisdiction. That the doctrine of *in custodia legis* is a rule of property right, made for the benefit of litigants, as well as a rule of jurisdiction, made for the purpose of avoiding conflicts between courts, is abundantly demonstrated by the following cases: *Berlin Mills Co. v. Lowe, et al.*, 211 Mass. 28, 97 N. E. 57, Ann. Cases, 1914B, 937-38; *Tuck v. Manning*, 150 Mass. 211, 22 N. E. 1001, 5. L. R. A. 666. In the opinion of the Court of Appeals it is declared:

"As we have heretofore said all matters in issue as to the ownership of the stock were settled by the decree. That litigation was at an end. The duty of the court with respect thereto had been performed." (26 Colo. Ap. 454, 145 Pac. 290.)

Herein lies the fundamental error of that court, in view of the fact that the decree was not yet enforced or carried out. Compare that language with this extract from the

opinion in 114 Federal 602, *supra,* cited and approved by this court in *National Bank v. Londonderry, supra,* before the Court of Appeals had spoken in this case:

"The position taken by counsel for complainant, that the court, having entered its final order in respect to the money in question, had exhausted its jurisdiction over the same, and that such funds then remain subject to seizure by attachment or other legal process, as any other property belonging to the defendant bank, is equally fallacious. A conclusion in favor of parties litigant in any controversy would be barren of good, if the court rendering the decision was powerless to cause its decrees and orders to be put into operation and duly executed; and such a result as to moneys in the courts open registry, would, indeed, leave it in a helpless and pitiable plight. In *Wayman v. Southard,* 10 Wheat. 1, 6 L. Ed. 253, Chief Justice Marshall said: 'The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied. Many questions arise on the process, subsequent to the judgment, in which jurisdiction is to be exercised.' In *Osburn v. U. S.,* 91 U. S. 474, 23 L. Ed. 390. Mr. Justice Field, speaking for the Supreme Court, said: 'The power of the court over moneys belonging to its registry continues until they are distributed pursuant to final decree in the cases in which the moneys are paid."

Language more clearly in point could not well have been uttered, even if the learned authors of the opinion from which the above quotations are taken had been speaking concerning the facts in the case at bar.

There can be no reasonable doubt that the shares of stock attempted to be levied upon fall within the rule laid down in the cases herein referred to, were *in custodia legis,* and in a separate and independent suit, whether in the same or another court, between other parties, were beyond reach of legal process.

The former opinion is withdrawn, and this one substituted therefor, the judgment of the Court of Appeals is reversed, that of the trial court affirmed and the cause remanded to the latter court.

Decision *en Banc.*

Mr. Justice Allen not participating.

Decided October 4, A. D. 1915.   Rehearing denied June 4, A. D. 1917.