No. 16,166.

GILLESPIE *v.* DISTRICT COURT, PUEBLO COUNTY ET AL.
(202 P. [2d] 151)

Decided January 24, 1949. Rehearing denied January 31, 1949.

Mr. A. T. STEWART, for petitioner.

Messrs. AMMONS & BROMLEY, Mr. ROBERT T. KINGSLEY, for respondents.

*In Department.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

AN original proceeding in prohibition. The controversy has to do with the disposition of certain funds deposited with the clerk of the district court of Pueblo county. Those interested are petitioner here, who is the divorced wife of one Larry N. Gillespie, and Juliana M. Adams, mother and judgment creditor of said Gillespie. Respondent judge ordered that the money be turned over to the sheriff of Pueblo county, who held an alias execution and fee bill issued by the district court of the City and County of Denver, in which Mrs. Adams was given judgment. Since the parties agree that the order of which complaint is made was not a final one, seemingly so, we do not pause to examine as to petitioner's right to maintain prohibition in any event, but address ourselves at once to the merits of the petition.

It appears that December 9, 1947, Larry Gillespie filed suit in the Pueblo district court for divorce against Lucille Louise Gillespie, petitioner here; that December 17, 1947, the wife filed petition for temporary alimony and support, and custody of a minor child of the parties, and simultaneously filed petition for a temporary restraining order, seeking to prevent her husband from disposing of his interest in certain personal property, including his one-half interest in the "Top Hat Lounge and Grill," owned by a copartnership consisting of the said Gillespie and one Kneise; that on the same date the court in which said cause was pending, and over which respondent, the Honorable J. Arthur Phelps, then was presiding, issued a restraining order in conformity with said petition, "pending the further order of the court";

that January 17, 1948, the said court and judge granted and ordered the payment of the sum of one hundred twenty-five dollars toward the support and maintenance of petitioner here (the wife) and the minor child of the parties in the divorce suit; that January 21, 1948, the wife filed answer and cross complaint, in which she prayed for divorce and for an equitable distribution and partition of property, etc.; that January 30, 1948, an interlocutory decree was awarded the wife on her answer and cross complaint, and subsequently a final decree of divorce was granted to her, but not in such decree, or otherwise, as yet, has there been an order of settlement as to partition of property, or alimony for the wife or child (shortly thereafter a second child was born); that July 12, 1948, the two partners owning the Top Hat property and one Alberico met to consider a sale thereof. Others present were V. G. Seavy, attorney for Gillespie, A. T. Stewart, attorney for Mrs. Gillespie, and Sperry S. Packard, attorney for Alberico. A copy of the restraining order was before them. Subject thereto, members of the partnership and Alberico agreed upon a sale price of $16,700.30, each partner to receive one-half thereof, or $8,350.15. Mr. Stewart, representing Mrs. Gillespie, expressed a willingness to permit consummation of the sale if Gillespie's one-half of the proceeds should be so held or impounded that his client's rights would be protected. The several parties and their counsel gave attention to the problem, and, as stated by Mr. Packard in his affidavit of the record here, "It was thereupon agreed between us all at the conference that the sum of $8,350.15, which represented and was the entire interest of Larry N. Gillespie in said business should be entirely cleared by paying the said amount to said clerk of the district court, to be held by said clerk subject to such disposition in the divorce proceedings as the court might determine between the claims of the wife of Larry N. Gillespie and his mother if and when said mother filed any claim." Proceeding thereon,

Gillespie, addressing a letter to "Mr. Joe R. Botleman, Clerk District Court, Pueblo, Colorado," remitted to him the sum mentioned, saying it "is subject to the claims of my mother Mrs. Juliana M. Adams, of Akron, Colorado, and of my wife and myself, as may be determined is just and right between us." It should be noted that the court ordered all alimony and support money for Mrs. Gillespie and children should be paid through the clerk's office. On one occasion, after the deposit made to the clerk in the considerable sum appearing, Gillespie was in default in the sum of $187.50, and on showing, the court ordered the clerk to pay said sum to Mrs. Gillespie, which was done and charged to the deposit account. That order and payment accounted for the difference between $8,350.15, the sum deposited, and $8,162.65, the sum mentioned in the clerk's answer as garnishee, hereinafter mentioned.

It further appears that March 10, 1948, Juliana M. Adams, proceeding in the Denver district court on her son's promissory note, was given judgment against him for $11,222, and costs; that September 16, 1948, the fund which came into possession of the clerk of the Pueblo district court in the divorce action, as already stated, as alleged in respondent's answer, was "garnisheed in the hands of J. R. Botleman, Clerk, pursuant to an alias execution and fee bill issued by the district court of Denver county on a judgment rendered therein against Larry N. Gillespie in the sum of eleven thousand two hundred twenty-two dollars, plus costs." The clerk answered: "I have in my possession the sum of $8,162.65 deposited in case number 31855, entitled Larry Gillespie vs. Lucille Louise Gillespie. This money was deposited by the plaintiff together with a letter which stated that the money was subject to the claims of Juliana M. Adams * * *, Larry Gillespie the plaintiff and Lucille Louise Gillespie. No court order has been entered herein determining the claims of Larry Gillespie or any of the other claimants, so at this time I am unable to state the value

of Larry Gillespie's share of said money." There was traverse to the answer, and replication thereto. It further appears, that, September 28, 1948, said Juliana M. Adams filed a petition in the divorce action No. 31855, Pueblo district court, in which she alleged, inter alia, that, proceeding in virtue of her said judgment against her son, the "sheriff has levied on the eight thousand three hundred and fifty dollars and fifteen cents held by the said Joe R. Botleman, Clerk of this Honorable Court." She prayed that the "court enter an order directing Joe R. Botleman, Clerk of this Honorable Court, to pay the aforesaid sum over to petitioner as judgment creditor of plaintiff, or * * * pay said sum to the Sheriff of the County of Pueblo, under the execution and fee bill issued by the clerk of the district court of the City and County of Denver." Although counsel for Mrs. Gillespie objected thereto, and challenged the authority of respondents court and judge to consider or act on Mrs. Adams' petition, nevertheless, said respondents, proceeding in the divorce action, ordered that "said J. R. Botleman, as clerk of the district court is directed to pay the sum of $8,162.65 to the sheriff of Pueblo County, Colorado, to be dealt with by said sheriff under the execution and fee bill issued by the district court of the City and County of Denver," etc.

We cannot think justification attends the order of which complaint is made. Orders made by respondents in behalf of Mrs. Gillespie and her children in the divorce action, all antedating the date of the judgment of Mrs. Adams' reliance, operated to preserve certain assets of Gillespie in the interest of the wife and children in said action. Concededly, the judgment creditor had no interest in those assets, as such, and, as against the restraining order existent in behalf of petitioner at all times of significance here, writs looking to the enforcement of the creditor's judgment obtained subsequent to such restraining order, necessarily were junior thereto. But, as said in behalf of the creditor, the sale of the

property in the circumstances here, operated to release or cancel the right Mrs. Gillespie was enjoying in virtue of the restraining order. Let us see. As clearly appears, the only effect of the sale was to transpose or convert that property into money, believed by the parties interested to be desirable, and upon the express understanding that the money so arising should at once be covered into the hands of the clerk of the respondent court of the venue of the divorce suit whence the restraining order originated, and for disposition by that court in relation to the reasonable demands in behalf of the wife and children therein. In accordance therewith, the interest of Gillespie in the avails of the sale, to the last cent, was given into the hands of "J. R. Botleman, Clerk" of the respondent court, and was held by such official at the time of the order challenged in this proceeding.

We are not in accord with the view of respondents, that, because a formal court order directing deposit of the funds in question with the clerk of the court was not sought and entered, petitioner thereby may be despoiled of her rights in the premises. Such holding would be highly technical, and essentially unjust, as we think.

■ The restraining order made by the court in the divorce case is not controlled or limited by the provisions of Rule 65 (b) of the Rules of Civil Procedure, as contended by respondents. "This rule shall not apply to suits for divorce, alimony, separate maintenance or custody of infants," etc. See Subdivision C (h) of the same rule.

■ By every rule of reason, as we are persuaded, and by every demand of justice, we should hold that the fund involved was in custodia legis, and not subject to execution. The general doctrine is well stated in *Gibbons v. Ellis,* 63 Colo. 76, 165 Pac. 783. Although it does not follow that petitioner necessarily shall enjoy the entire sum impounded, nevertheless, the primal rights of the wife and children in the divorce action in relation

thereto should be recognized, concerning which respondents will inquire in due course, and find and adjudge as advised.

Let the rule to show cause be sustained.

MR. JUSTICE HAYS and MR. JUSTICE ALTER concur.