940 F.2d 671
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
RESOLUTION TRUST CORPORATION, as Receiver for Southwest
Savings Association, Plaintiff-Appellee,
v.
HERITAGE FINANCIAL CORPORATION, a Colorado corporation,
Richard H. Rossmiller, Lower Downtown Associates,
a Colorado partnership, Defendants,
Household Bank FSB, formerly Brighton Federal Savings and
Loan Association, Post-Judgment-Claimant-Appellant.
 No. 90-1226.
 United States Court of Appeals, Tenth Circuit.
 July 24, 1991.
 
 Before LOGAN, JOHN P. MOORE and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 LOGAN, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Household Bank appeals an order by the district court affirming the decisions of two magistrate judges awarding certain funds of a mutual judgment debtor, Richard H. Rossmiller, to Brazosbanc Savings Association of Texas.[1] At issue on appeal is whether the funds in question were in custodia legis[2] when Household Bank attempted to execute on them and, if so, whether any of the attempted executions created a valid lien on the funds.
 
 
 3
 In March 1986, Brazosbanc obtained a money judgment against Rossmiller in the federal district court in Denver, Colorado. Brazosbanc then sought discovery of Rossmiller's assets pursuant to Fed.R.Civ.P. 69. In November 1986, while Brazosbanc was still in discovery proceedings, Household Bank obtained a money judgment against Rossmiller in Colorado state court.
 
 
 4
 After a hearing on Brazosbanc's discovery requests in January 1987, Magistrate Judge Clifton entered an order directing Rossmiller to "pay to the order of the Clerk of this Court for deposit in the Court registry in interest-bearing accounts any and all tax refunds or other monies due him or to become due him from the United States of America through the Internal Revenue Service for tax years 1985 and 1986." I R. tab 4 at 1. The order also applied to "any State tax refunds, Colorado or otherwise, for tax years 1985 and 1986." Id. at 2. The order required Rossmiller to make "prompt written disclosure" of any deposit to all counsel of record and to "any parties known to Mr. Rossmiller to have an interest in the monies so deposited," id. at 1-2, and directed him not to "take any action, directly or indirectly, to impair or dispose of any of his interests in Federal or State tax refunds for tax years 1985 and 1986," id. at 2. The district court approved this turn-over order nunc pro tunc in January 1987.
 
 
 5
 In October 1987, Rossmiller deposited with the court the first installment of his 1985 federal tax refund. The parties to the action then stipulated to the procedure that would be followed in filing claims to the funds. Four claimants filed claims, including Brazosbanc and Household Bank.
 
 
 6
 Before the hearing on the claims, Household Bank twice attempted to execute on the funds held by the federal district court. In January 1988, Household Bank served a writ of garnishment on the clerk of the federal district court, and in March 1988, it served a writ of execution on the sheriff of the City and County of Denver. Both writs were issued by the state district court pursuant to state law. See Colo.R.Civ.P. 103; Colo.Rev.Stat. Secs. 13-54.5-103 & 13-52-110 to -111. Household Bank then argued at the hearing that its execution on the funds pursuant to Colorado law created a lien that was superior to Brazosbanc's claim.
 
 
 7
 Thereafter, in June 1988, Magistrate Judge Clifton determined that the security interests asserted by the other two claimants to the refund were void under Colo.Rev.Stat. Sec. 38-10-117 because they were made "with the intent to hinder, delay or defraud creditors Brazosbanc and Household Bank from collecting their judgments." I R. tab 11 at 4. She further concluded that Household Bank's attempts to execute on the funds did not create a lien because "[w]hen the funds were paid into the court they were not subject to execution." Id. As between Brazosbanc and Household Bank, Magistrate Judge Clifton determined that Brazosbanc was entitled to the funds on equitable grounds: Brazosbanc obtained its judgment before Household Bank; the funds were discovered and brought into the court's hands solely through Brazosbanc's efforts; and both the turn-over order and the stipulation as to procedure contemplated that the funds would go to Brazosbanc in partial satisfaction of its judgment if no claimant had a superior claim.
 
 
 8
 On October 26, 1988, Rossmiller's attorney mailed a check to the clerk of the court from the U.S. Treasury Department representing a portion of Rossmiller's 1986 federal tax refund. The clerk received the check on October 28th. In the interim, Household Bank served writs of garnishment on Rossmiller's attorney (located in Arapahoe County) and the clerk of the court. Household Bank also served writs of execution on the sheriffs of Denver and Arapahoe Counties. Household Bank then filed its claim to the funds, asserting a prior lien resulting from the writs. The only other claimant to the funds was Brazosbanc.
 
 
 9
 Without holding a hearing, Magistrate Judge Harvey entered an order on December 9, 1988, awarding the funds to Brazosbanc, basing his decision on the reasoning of Magistrate Judge Clifton's June 1988 order, and Household Bank attempted to appeal Magistrate Judge Harvey's order to this court. We dismissed this appeal, reciting in our order that because the parties did not formally agree to the jurisdiction of the magistrate judge under 28 U.S.C. Sec. 636(c), and the district court did not approve the magistrate judge's order after it was entered under 28 U.S.C. Sec. 636(b), the appeal was defective for the same reasons set forth in Colorado Bldg. & Constr. Trades Council v. B.B. Andersen Constr. Co., 879 F.2d 809 (10th Cir.1989). I.R. tab 18.
 
 
 10
 In light of our order, Household Bank filed objections to the two magistrate judges' orders with the district court. The district court approved the two distribution orders, concluding that the magistrate judges properly applied Colorado law in determining that under the doctrine of custodia legis, Household Bank's actions were not effective to create a superior lien on the funds. This appeal followed.
 
 
 11
 On appeal, Household Bank contends that the magistrate judges and the district court improperly applied the doctrine of custodia legis to invalidate Household Bank's attempts to execute on the funds. It argues that funds held in custodia legis are exempt only from levy and garnishment, not execution. Household Bank reasons that a writ of execution, unlike a writ of garnishment or levy, attaches only a lien to the property and does not require the court to turn over the property. Therefore, a writ of execution does not interfere with the custodial court's jurisdiction over the funds. Household Bank also argues that even if the decision to give the 1985 tax refund to Brazosbanc were correct, the same rationale should not have been used in determining priorities to the 1986 tax refund. Household Bank contends that by serving writs of garnishment and execution on the appropriate parties before the clerk of the court actually received the 1986 payment, the funds arrived at the court subject to Household Bank's lien. We disagree.
 
 
 12
 The procedure to enforce a money judgment obtained in federal court "shall be in accordance with the practice and procedure of the state in which the district court is held...." Fed.R.Civ.P. 69(a). Colorado "has consistently adhered to the well-established common law doctrine that property which has passed into the custody of a court cannot be interfered with by process issued by another judge in the conduct of other legal proceedings." Boatright v. Spalding, 439 P.2d 362, 363 (Colo.1968). This doctrine of custodia legis applies to property either actually or constructively in the custody of the court. Gibbons v. Ellis, 165 P. 783, 785 (Colo.1917).
 
 
 13
 Under Colorado law, the turn-over order entered in January 1987, was sufficient to put Rossmiller's refunds in custodia legis. See Maley v. Heichemer, 256 P. 4, 6, 8 (Colo.1927) (court order in criminal action directing warehouse to prevent removal of 500 cases of tomatoes put goods in custodia legis ); Gibbons v. Ellis, 165 P. at 786 (mere commencement of suit to determine rights to stock certificates put certificates "in the constructive possession of the law").
 
 
 14
 Once the tax refunds were in custodia legis, Household Bank could not use the process of any other court to " 'assert any claim to, or secure any right in or lien upon, such funds' " without the federal court's permission. Gibbons v. Ellis, 165 P. at 785 (quoting Corbitt v. Farmers' Bank of Del., 114 F. 602, 603 (4th Cir.1902) ). Therefore, from the moment the federal court issued the turn-over order, Household Bank could neither garnish the funds nor execute on them, even if their only effect would be to attach a lien to the funds.[3] Household Bank's attempts to establish a priority over Brazosbanc were in vain.
 
 
 15
 In deciding which of the two judgment creditors were entitled to the funds, Magistrate Judge Clifton properly determined that neither had a lien on the funds. She then applied equitable principles to determine which of the two otherwise equal claimants was entitled to the funds. Household Bank does not take issue with this approach and does not argue that the distributions were inequitable. Household Bank argues only that equitable principles should not be used to exalt a nonlienholder judgment creditor over an alleged lienholder judgment creditor. Having concluded that Household Bank was not a lienholder, we affirm the order of the district court approving the distribution orders of the two magistrate judges.
 
 
 16
 The judgment of the United States District Court for the District of Colorado is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The original plaintiff in this action, Brazosbanc Savings Association of Texas, was succeeded by Southwest Savings Association, which is now under the receivership of the Resolution Trust Corporation
 
 
 [2]
 Custodia legis means "[i]n the custody of the law." Black's Law Dictionary 348 (6th ed. 1990)
 
 
 [3]
 We note that under Colorado law, a writ of execution contemplates more than the mere attachment of a lien; it contemplates that any property described in the writ and located in the county will be seized by the sheriff and delivered to the court for satisfaction of the judgment within ninety days of delivery of the writ to the sheriff. See Colo.Rev.Stat. Sec. 13-52-111; I.R. tab 13 (writs of execution in this case directed sheriffs of Denver and Arapahoe Counties to "satisfy the above judgment ... from the goods, chattels, lands and tenements of the above-named judgment debtor," and to "render said moneys to this court to apply to the satisfaction of said judgment")